UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 1:23-CR-114 (ACR) |
| | : | |
| KYLE ALAN MLYNAREK, and | : | |
| RONALD MICHAEL BALHORN | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' RULE 29 MOTIONS**

The government submits this brief to address arguments made by the defense in briefing and questions raised by the Court at trial.

**I.   Legal Standard**

Rule 29 permits a defendant to move for judgment of acquittal, at the close of the government's case in chief or at the close of all evidence, on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  The Court must consider the evidence "in the light most favorable to the government" to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted).  Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)).

**II.   There is Ample Evidence That The Defendants Violated 18 U.S.C. § 231(a)(3)**

    **a.   Elements of the Offense**

To prove that a defendant violated 18 U.S.C. § 231(a)(3), the government must prove three elements beyond a reasonable doubt:

1

First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;

Second, at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

*See* ECF No. 34 at 60.  The defendants have conceded the second two elements; all that remains is the first.

Mlynarek, in his memorandum, misstates the elements of a violation of 18 U.S.C. § 231(a)(3) and attempts to add an additional element that the defendant use violent force.  ECF No. 49 at 1-2 ("the Government must prove that Mr. Mlynarek acted with the specific intent to impede or obstruct law enforcement and that he engaged in an action that involved some violent force with a police officer on the scene").  But to claim that the statute requires the defendant to have "engaged in an action that involved some violent force" entirely misreads the statute.  Unlike the assault on a federal officer charge, there is no requirement in the text of the statute for anything even approximating "violent force."  *Compare* 18 U.S.C. § 231(a)(3) (applying to defendants who "obstruct, impede, or interfere with" a law enforcement officer) *with* 18 U.S.C. § 111(a)(1) (applying to a defendant who "*forcibly* assaults, resists, opposes, impedes, intimidates, or interferes" with a law enforcement officer (emphasis added)).  Moreover, Section 231(a)(3) does not require a defendant to "engage in" such violent action:  rather, it applies to a defendant who "commits *or attempts to commit*" the obstructive actions described above.  *See United States v.*

2

*Grider*, No. 21-cr-022 (Kollar-Kotelly, J.), 2022 WL 17829149, at *8 (D.D.C. Dec. 21, 2022) ("As to the proscribed conduct, for the purposes of this statute, the Court need not find that the defendant's actions in fact obstructed law officer officers. Rather, the Court need only find that the defendant committed *or attempted to commit* an act with the specific intent to obstruct law enforcement officers." (emphasis added)).[1]

Mlynarek argues that Section 231 "requires more than presence at a civil disorder." ECF No. 49 at 3. The government entirely agrees. But this is not the same as requiring "violent physical acts." *Id.* In support of his argument, Mlynarek relies on a fifty-two-year-old decision—*United States v. Mechanic*—from another circuit, one which the defense appropriately notes has been repeatedly rejected by courts in this district. *See United States v. McHugh*, 583 F. Supp. 3d 1, 28-29 n.26 (D.D.C. 2022) (rejecting a "violent physical acts requirement" as "such a reading is neither warranted by the text nor necessary to save the law from unconstitutionality."); *United States v.*

---

[1] This is consistent with other recent convictions under 18 USC § 231(a)(3), which show that the defendants' conduct here was of similar gravity as that in other civil disorder cases. For instance, at trial or by plea:
- A defendant was convicted for pulling a door open, yelled, "Let's Go!" and directing more rioters inside the Capitol, *United States v. Gerwatowski*, 1:22-CR-125 (Cobb, J.).
- A defendant was convicted for walking to a police line, forcing the officers to physically push him out of the Rotunda, *United States v. Adams*, 1:22-CR-358 (Howell, J.).
- A defendant was convicted for pushing a lacrosse stick against a police officer's chest, *United States v. Blair*, 1:21-CR-00186 (Cooper, J.).
- A defendant was convicted for overrunning well-marked barriers manned by uniformed officers at the Peace Circle, *United States v. Hart*, 1:21-CR-00540 (Friedrich, J.).
- A defendant was convicted for pushing his way past police trying to guard the Rotunda Doors, *United States v. Griswold*, 1:21-CR-00459 (Cooper, J.).
- A defendant was convicted for confronting members of the Metropolitan Police Department with a large wooden stick, *United States v. Robertson*, 1:21-CR-00034 (Cooper, J.).
- A defendant was convicted for pulling on one of the officers' riot shields, *United States v. Presley*, 1:21-CR-257 (Moss, J.).
- A defendant was convicted for forcibly obstructing officers who were attempting to adjust barriers in the West Terrace, *United states v. Mostofsky*, 1:21-CR-00138 (Boasberg, J.).

*Mostofsky*, 579 F. Supp. 3d 9, 23 (D.D.C. 2021) ("Non-violent conduct could also be covered, since not all such conduct would be expressive."); *United States v. Nordean*, 579 F. Supp. 3d 28, 58 (D.D.C. 2021) ("there is no basis in the text of the statute for such a limitation [to violent conduct].  The Court concludes that the statute is targeted primarily if not exclusively at conduct, whether violent or not." (cleaned up)); *United States v. Phomma*, 561 F. Supp. 3d 1059, 1068 (D. Or. 2021) ("[T]he statute is targeted primarily if not exclusively at conduct, whether violent or not, rather than speech.").  Thus, as multiple courts in this district have confirmed, neither the text of the statute, nor broader constitutional concerns, create an implicit requirement that violations of Section 231 be violent, or even that the defendant physically touch an officer.[2]

      **b. There is More Than Sufficient Evidence that the Defendants Obstructed, Impeded, or Interfered with Law Enforcement Officers Engaged in the Lawful Performance of Their Official Duties, or Attempted to Do So.**

The parties have stipulated to the existence of a civil disorder at the United States Capitol on January 6, 2021 and to its adverse effect on commerce and federally protected functions.  *See* GX 1001 at ¶¶ VII, VIII, IX.  And, through the testimony of Officers Abdulkadir Abdi, Kaylee

---

[2] In fact, defendants in January 6 cases have been convicted of violations of 18 U.S.C. § 231(a)(3) for conduct that does not involve physical contact with an officer.  In *United States v. St Cyr*, 22-cr-185 (Bates, J.), for instance, the defendant was convicted of two counts civil disorder for (1) pushing against and breaking through police barriers on the West Plaza and (2) yelling for "fresh people" and to "push" as rioters battled police officers in a narrow passageway leading to the interior of the Capitol building referred to as the "Tunnel."  In *United States v. Jones*, 21-cr-213 (Leon, J.), the defendant was convicted of one count of civil disorder for attempting to break down a glass window to one of the doors to the Speaker's Lobby, just outside the House Chamber and evading attempts by law enforcement to vacate him and other rioters from the Capitol building.  In neither case did the defendant physically touch an officer.  Moreover, no court in a Capitol-riot case has adopted jury instructions that suggest that 18 U.S.C. § 231(a)(3) requires the element of physical touch.  *See, e.g.*, *United States v. Jensen*, 21-cr-6 (Kelly, J.) (ECF No. 97 at 21-22), *United States v. Webster*, 21-cr-208 (Mehta, J.) (ECF No. 101 at 15-16), *United States v. Schwartz, et al.*, 21-cr-178 (Mehta, J.) (ECF No. 172 at 17), *United States v. DaSilva*, 21-cr-564 (Nichols, J.) (ECF No. 76 at 2-3); *United States v. Gietzen*, 22-cr-116 (Nichols, J.) (ECF No. 50 at 22); *United States v. Alam*, 21-cr-190 (Friedrich, J.) (ECF No. 104 at 26).  To hold that Section 231(a)(3) has a physical touch requirement would import language into the statute that does not exist.

Banfield, and Donovan Zengierski, as well as Lieutenant William Hackerman and Captain Sean Patton, the government has presented undisputed evidence that the law enforcement officers protecting the Capitol on January 6, 2021, including U.S. Capitol Police officers, were engaged in the performance of their official duties. Thus, the only issue in dispute the whether the defendants obstructed, impeded, or interfered with a law enforcement officer or attempted to do so. The government has presented ample evidence that they did.

### i. The Defendants Shoved a Law Enforcement Officer

Through Government Exhibit 317 (the "Nigrotime video"), the government presented evidence that both defendants shoved a United States Capitol police officer on the Northwest Terrace as they made their way to breach the entrance of the Capitol. GX 317 at 19:10-19:20. That video depicts Balhorn physically engaging with one of the officers, pushing the officer, as depicted below.



GX 317 at 19:15

While the view of Mlynarek is partially blocked by Balhorn and the officers' bodies, the video demonstrates that Mlynarek pushed the officer as well, joining Balhorn's effort. As outlined below, the video depicts Mlynarek (1) returning to the officer from behind, (2) pivoting to face the officer, (3) stepping towards the officer, and (4) leaning his body forward. Indeed, given how the officer is pushed backwards and the positioning of Mlynarek's right arm, it is apparent that *both* Mlynarek and Balhorn are pushing the officer: the officer is moving backwards in one direction while Balhorn is pushing him; when Mlynarek joins, applying force from a different angle, the officer's movement changes.

**Table 1: Stills From Exhibit 317**

| | |
|---|---|
| GX 317 at 19:14:<br>Mlynarek returns to the officer from behind. |  |
| GX 317 at 19:15:<br>Mlynarek pivots to face the officer |  |

GX 317 at 19:15:
Mlynarek steps towards the officer



GX 317 at 19:15:
Mlynarek leans his body forward, with his right shoulder against the officer. The officer begins moving perpendicularly to his or her prior trajectory.



### ii.  Shoving the Officer Is a Violation of 18 U.S.C. § 231(a)(3)

By shoving the officer, the defendants "commit[ed] or attempt[ed] to commit any act to *obstruct*, *impede*, or *interfere*" with a law enforcement officer. The definitions of the emphasized terms are, in relevant part:

- Obstruct: "To make difficult or to present obstacles to the accomplishing of a thing."
- Impede: "to interfere with or slow the progress of."

8

- Interfere: "to interpose in a way that hinders or impedes: come into collision or be in opposition"[3]

Section 231(a)(3) does not require the government to prove that any officer was injured or that they were *substantially* (or *successfully*) obstructed, impeded, or interfered with. In this context, however, it is clear that the defendants were successful. Capitol Police Officers Kaylee Banfield and Donovan Zengierski testified that the Capitol Police were trying to prevent rioters from advancing to the Capitol. Most officers on the Northwest Terrace were trying to stop rioters from attacking the east front of the building; video shows that just two officers were left to protect the west front. By shoving the officer, the defendants "ma[de] difficult," "interfere[d] with," and "hinder[ed]" these officers' effort to protect the Capitol—in fact, with respect to the defendants, who later breached the building, it rendered the officers' efforts a complete failure. That the officers did not react more dramatically to being shoved, or elect to pursue the defendants, does not negate the defendants' actions.

Moreover, to interpret the officers' reactions as indicative of the "peaceful" nature of the defendants' engagement with them is to ignore the larger context in which those officers were operating. As multiple officers testified, the number of rioters that day was overwhelming and law enforcement was vastly outnumbered. Exhibit 317 shows that, feet away from the officers in question, a large mob of rioters was antagonizing officers and attempting to remove bike rack barricades preventing entry to a large—and exposed—entrance to the Capitol building. It would have been futile, counterproductive, and strategically unwise to chase after one or two rioters,

---

[3] *Obstruct*, BALLENTINE'S LAW DICTIONARY (2010); *Impede*, Merriam-Webster Dictionary (2023); *Interfere*, Merriam-Webster Dictionary (2023). (The use of different dictionaries is not to cherry pick definitions, but rather that legal dictionaries did not define "Impede" or "Interfere").

leaving either that path to the terrace entirely unguarded or a single officer to hold back the crowd by his or herself.

The government does agree that it must prove that the defendants intended to obstruct, impede, or interfere with a law enforcement officer. *See United States v. McHugh*, 583 F. Supp. 3d 1, 25 (D.D.C. 2022) ("This Court agrees: § 231(a)(3) is a specific intent statute, criminalizing only acts performed with the intent to obstruct, impede, or interfere with a law enforcement officer."). It has more than done so. The defendants' shoving is itself indicative of their intent. *See* Proposed Jury Instructions, ECF No. 34 at 58 ("You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or intentionally did not do."). In addition, a small mountain of evidence further shows their intent to interfere with law enforcement, including their confrontation with officers on the Capitol lawn, their decision to trespass into the Capitol despite shattered glass and frantic officers, and their declarations shortly after their attack on the Capitol that "[P]atriots are gonna stand up and fight for what we believe in and if u have a problem with that then fuck off and stay out of the way" (Mlynarek statement, GX 704 at 493) and "We will continue to have a civil unrest until the government handles it's [sic] responsibilities properly." (Balhorn statement, GX 205 at 91).

### c. The Defendants Were Not Defending Themselves or Following Orders

At oral argument, the Court raised a number of hypothetical explanations for the defendants' altercation with the officers. These alternative theories are insufficient to support a finding that no rational trier of fact could have found the essential elements of a violation of 18 U.S.C. § 231(a)(3) beyond a reasonable doubt.

### i. No Evidence Suggests that the Defendants Were Legitimately Acting in Self Defense or the Defense of Others

A defendant has the right to use a reasonable amount of force in self-defense or in defense of another if he (1) actually and reasonably believes that the use of force was necessary to defend himself or the other person against the immediate use of unlawful force, and (2) uses no more force than was reasonably necessary in the circumstances. *See United States v. Dixon*, 548 U.S. 1, 13-14 (2006). At common law, self-defense is the use of force necessary to defend against the imminent use of unlawful force."). *Cf. United States v. Waldman*, 835 F.3d 751, 754 (7th Cir. 2016) ("While 18 U.S.C. § 111 does not explicitly address self-defense, when a statute is silent on the question of affirmative defenses, we are to effectuate the defense as 'Congress may have contemplated it,' looking to the common law as a guide."); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012) ("For purposes of Section 111, we have recognized that an individual may make out an affirmative defense of self-defense against a federal law enforcement official who uses excessive force in a narrow range of circumstances. . . . To do so, however, a defendant must offer evidence to show: (1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." (quotation marks omitted)).

Unlawful force is force that was unreasonable or unnecessary under the circumstances. A law enforcement officer may use a reasonable amount of force, judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The reasonableness of a particular use of force depends on the circumstances of each case, including the severity of the crime at issue, whether the defendant poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *United States v. Drapeau*, 644 F.3d 646, 654 (8th

11

Cir. 2011). Importantly, a person may act in self-defense against a law enforcement officer only if he actually and reasonably believes the officer was using unlawful or excessive force. However, a person who was the initial aggressor does not act in self-defense. *See Acosta-Sierra*, 690 F.3d at 1126.

To this point—and this is crucial—there has been no testimony or evidence presented that either of defendants actually or reasonably believed that shoving the officer was necessary to defend themselves against the immediate use of unlawful force. Nor has there been testimony or evidence to suggest that the officers on the Northwest Terrace acted unlawfully. No witness has suggested it; no defendant has even raised the issue on cross-examination. Moreover, there is strong evidence to believe that the officers that day *were* acting lawfully: the defendants had trespassed over a restricted perimeter with the intent—and effect—of entering a restricted area where Congress was in the process of certifying the electoral college count. The Capitol Police officers were charged with securing the Capitol, protecting those inside, and preventing the onslaught of rioters. Nothing in the video, and no other evidence or testimony, suggests that officers' attempts to repel the defendants were unreasonable or unlawful.

### ii. No Evidence Suggests that the Defendants Were Following Police Orders

The Court also posited that the defendants could have been directed by law enforcement to advance past the two police officers stationed on the entry to the Northwest Terrace. There is no support for this in the evidence. First, the nature of the defendants' interactions with the officers demonstrates that this was not a friendly encounter. Second, less than 30 seconds prior to the altercation, Mlynarek was present in the larger rowdy, noisy mob of rioters farther east, several rows back from the barricades. GX 317 at 18:51. It would have been impossible for an officer

manning those barricades to have directed solely Mlynarek to go find an alternative route to the Capitol building without being captured in the video exhibit.

The Court suggested that if the defendants were found guilty here, all January 6 defendants would be guilty of civil disorder. Not so. Defendants who merely trespassed over the restricted perimeter or entered the Capitol did not necessarily obstruct, impede, or interfere with law enforcement, and have appropriately been charged with lesser offenses. To interpret the civil disorder statute more broadly could, in its extreme, raise constitutional concerns of vagueness, and as such, the government has not charged lesser defendants with this crime. To acquit the defendants in this case for this reason would be to punish the government for a legal position it hasn't actually taken in this case.

## III. Balhorn Carried a Dangerous Weapon

At trial, the Court requested briefing on what constitutes a deadly or dangerous weapon. As described more fully below, such a weapon includes any item (1) capable of causing serious bodily injury or death and (2) is carried with the intent that it be used in such a manner. Balhorn's large wooden stick could cause serious bodily injury or death, and Balhorn intended to use it in that manner.[4]

### a. A Deadly or Dangerous Weapon Includes Any Item Capable of Causing Serious Bodily Injury or Death and is Carried with the Intent that It be Used in Such a Manner

Congress did not define what a "deadly or dangerous weapon" is under 18 U.S.C. § 1752(b)(1)(A). Courts have instead deferred to factfinders to decide, in each case, whether an item

---

[4] Mr. Balhorn's large wooden stick does not constitute an inherently deadly or dangerous weapon person. *But see United States v. Passaro*, 577 F.3d 207, 222 (4th Cir.2009) ("The Guideline[s]-sanctioned definition of dangerous weapon encompasses an extremely broad range of instrumentalities."); *Outzs v. Cain*, 06-cv-0208, 2006 WL 3941003, at *1 (W.D. La. Nov. 30, 2006) ("inherently dangerous objects" include "guns, knives or clubs").

carried by the defendant was, in fact, a deadly or dangerous weapon. For example, in *United States v. Robertson*, 2022 WL 2438546 (D.D.C. July 5, 2022), a Capitol riot defendant was charged with violating 18 U.S.C. §§ 1752 (a)(1), 1752(a)(2) and 1752(b)(1)(A)—and was found guilty by the jury—for carrying but not using a large wooden stick. Given that the Government only charged Robertson with carrying—but not using—a large wood stick, the court in *Robertson* instructed the jury the following:

> In order for you to find that the stick is a deadly or dangerous weapon, you must find that (1) it is capable of causing serious bodily injury, and (2) the defendant carried it with the intent to use it in a manner capable of causing serious injury. The defendant need not have actually used the stick in that manner.

*United States v. Robertson*, 610 F. Supp. 3d 229, 237 (D.D.C. 2022); s*ee also United States v. Jensen*, No. 21-CR-6 (Kelly, J.) (ECF 97 at 36) (jury instructions).

This Court should adopt the *Robertson* framework as it rests on sound reasoning and fairly incorporates a specific intent requirement. As the court in *Robertson* explained:

> Consider a pen, for example. It cannot be criminal to simply carry a pen. But a fact finder's assessment may change if there were evidence that a defendant tightly gripped a pen in his hand, raised to his chest, with its tip facing out toward an approaching officer. Even if the defendant never used the pen to jab at the officer, a jury may find that he carried the pen with the intent to use it in a manner capable of causing serious injury.

*Robertson*, 610 F. Supp. 3d at 238.

Balhorn's reliance on *United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002), is misplaced. That case concerned a different statute, 18 U.S.C. § 111(b), which explicitly requires that a defendant "*use*[] a deadly or dangerous weapon." There is no such use requirement in the statutes under which Balhorn has been charged.[5] Here the Government does not allege that

---

[5] The court in *Robertson* distinguished *Arrington* for largely the same reasons. *See* 610 F.Supp.3d at 237, n.3 ("[*Arrington*] arises in a different context. That case dealt with a different statute (18 U.S.C. § 111) that criminalizes 'forcibly assault[ing]' an officer and enhances the penalty for

14

Balhorn *used* a large wooden stick, rather that he *carried* a large wooden stick. This is consistent with 18 U.S.C. § 1752(b)(1)(A), which encompasses any defendant who "uses or *carries*" "a deadly or dangerous weapon" (emphasis added).

### b. Balhorn's Large Wooden Stick Could Cause Serious Bodily Injury or Death, and Balhorn Intended to Use it in That Manner

The defense does not appear to dispute the first prong of the *Robertson* test—that the large wooden stick could cause serious bodily injury or death. Consequently, the key question is whether Mr. Balhorn intended to use his large wooden stick in a manner that *could* cause serious bodily injury or death.

The court in *Robertson* again addressed similar circumstances. *See* 610 F. Supp. 3d at 238. Robertson engaged in a "port arms" stance, where he cloistered a large wooden stick in both hands. *Id.* Even though the court considered the stance to be ambiguous, with both defensive and offensive applications, it nonetheless found reasonable the Jury's finding that "port arms" stance evidenced an intent to cause serious bodily injury or death. *See id.*

Here, Mr. Balhorn engaged in more egregious stances, body movements, and processions. The following picture is a representative still of Government Exhibit 404:

---

anyone who 'uses a deadly or dangerous weapon.' 18 U.S.C. § 111(a), (b) (emphasis added). It does not address 'carrying' a dangerous weapon.").



As can be seen by his bracing feet, Balhorn's stance is far more aggressive than Robertson's "port arms" stance which was found to evidence intent to cause serious bodily injury. *See* 610 F.Supp.3d at 238. Government Exhibit 404 shows Balhorn grasping his large wooden stick with only one hand, giving him a greater range of motion. And Balhorn took this stance just moments after (unsuccessfully) trying to surround and repel members of the police's Civil Disturbance Unit. In other words, he was already fighting law enforcement when he menaced the police.

Of course, Mr. Balhorn is not brandishing his large wooden stick on any day; he is doing it on January 6, 2021, amongst a riotous mob on restricted Capitol grounds as depicted in Government Exhibit 401:



Finally, as shown in Government Exhibit 205, the Government presented a series of messages sent by Mr. Balhorn showing his intent. Having time to reflect, Mr. Balhorn stated the following days after January 6, 2021:

- "It should never be the people versus the government it should be the government for the people. And that's not happening right now. So we will continue to have a civil unrest until the government handles it's responsibilities properly." *Id.* at page 91.

- In response to Mr. Mlynarek suggestions that one would "need a bomb" to break through the fortified doors of the Capitol, Mr. Balhorn responds: "Yep." *Id.* at page 156.

Mr. Balhorn thought himself a revolutionary, preparing for war. He stated as much in the clothes he wore, referencing the overthrow of the British monarchy. Government Exhibit 401.

The context of Mr. Balhorn's actions can also show intent. Given the heightened staging of the riotous environment, with police officers, blaring sirens, and tear gas at the heavily restricted United States Capitol of all place, Mr. Balhorn made a choice in light of these

17

conditions and used his large wooden stick to menace law enforcement.

Finally, should Mr. Balhorn provide self-serving testimony, describing his large wooden stick as a walking stick on January 6, 2021, this Court should judge his credibility considering the dozens of images, stills, and videos in evidence showing Mr. Balhorn brandishing his large wooden stick, untethered to the ground. Relatedly, the court in *Robertson* underscored that much of the evidence did "show [the Defendant] merely using the stick for walking." *See* 610 F.Supp.3d at 239. Nevertheless, the court in *Robertson* found sufficient evidence to support the jury's guilty verdict. Here, there is no meaningful evidence from January 6, 2021 that shows Mr. Balhorn's purported use of a walking stick. To assume without credible evidence that Mr. Balhorn used the stick for walking, without any evidence as such, would be to cast unreasonable doubt on the evidence admitted.

For these reasons, Mr. Balhorn's large wooden stick could cause serious bodily injury or death, and Mr. Balhorn intended to use it in that manner.

## IV.     Conclusion

The defendants intended to—and did—impede a police officer during the civil disorder of January 6, 2021. Additionally, one defendant—Ronald Balhorn—took with him to the Capitol a dangerous weapon, which he used to menace officers in peril. For the reasons above, the defendants' motions should be denied.

|  | Respectfully submitted, |
|---|---|
| DATED: October 17, 2023 | MATTHEW M. GRAVES<br>United States Attorney<br>D.C. Bar No. 481052 |
|  | By: /s/ Brendan Ballou<br>Brendan Ballou<br>DC Bar No. 241592<br>Special Counsel<br>United States Attorney's Office<br>601 D Street NW<br>Washington, DC 20001<br>(202) 431-8493<br>brendan.ballou-kelley@usdoj.gov |

Benet J. Kearney
Assistant United States Attorney
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-2260
benet.kearney@usdoj.gov

Pavan S. Krishnamurthy
D.C. Bar No. 252831
Assistant United States Attorney
601 D Street NW
Washington, DC 20001
(202) 252-7862
pavan.krishnamurthy@usdoj.gov

Jack Burkhead
NM Bar No. 10493
Assistant United States Attorney
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
jack.e.burkhead@usdoj.gov