```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,    ) CRIMINAL ACTION NO.:
                                  ) 23-0114-ACR
 4           Plaintiff,           )
         vs.                      )
 5                                )
     KYLE ALAN MYLNAREK and       )
 6   RONALD M. BALHORN,           ) Washington, D.C.
                                  ) February 21, 2024
 7           Defendants.          ) 9:30 a.m.
     _____ )
 8

 9
                     Transcript of Sentencing Hearing
10              Before the Honorable ANA C. REYES
                    United States District Judge
11

12

13   APPEARANCES:

14   For the Government:

15           Brendan Ballou, Esquire
             Jack E. Burkhead, Esquire
16           Pavan S. Krishnamurthy, Esquire
             U.S. Attorney's Office
17           950 Constitution Avenue NW
             Washington, DC 20530
18

19   For Defendant Kyle A. Mylnarek:

20           Darin Thompson, Esquire
             Matthew T. Gay, Esquire
21           Andrew Byrd, Esquire
             Office of the Federal Public Defender
22           for the Northern District of Ohio
             1660 W. 2nd Street
23           Suite 750
             Cleveland, OH 44113

24

25
```

APPEARANCES: (cont'd)


For Defendant Ronald M. Balhorn:

       Mark M. Rollins, Esquire
       Rollins & Chan
       419 Seventh Street, NW
       Suite 405
       Washington, D.C. 20004


Also Present:  Andre Wilson, U.S. Probation


Reported by:

       Christine T. Asif, RPR, FCRR
       Official Court Reporter
       United States District Court
       for the District of Columbia
       333 Contitution Avenue, NW
       Washington, D.C., 20001
       (202) 354-3247

Proceedings recorded by machine shorthand; transcript produced

1    by computer-aided transcription

2                    P R O C E E D I N G S

3          THE CLERK:  Your Honor, this is criminal action

4    23-114.  United States of America versus Kyle Mlynarek and

5    Ronald Balhorn.

6          Would the parties please come forward and identify

7    themselves for the record.

8          MR. KRISHNAMURTHY:  Good morning, Your Honor.  Pavan

9    Krishnamurthy for the Government.  Along with me I have

10   Mr. Brendan Ballou and Mr. Jack Burkhead.  Thank you.

11         THE COURT:  Good morning.  Welcome back.

12         MR. ROLLINS:  And good morning, Your Honor.  Mark

13   Rollins on behalf of Mr. Balhorn, who is present with me.

14         THE COURT:  Good morning.

15         MR. GAY:  Good morning, Your Honor.  Matt Gay, Darin

16   Thompson and Andrew Byrd on behalf of Mr. Mylnarek.

17         THE COURT:  Good morning, everyone.

18         All right.  We are here for the sentencing of the

19   defendants Ronald Balhorn and Kyle Mlynarek, who were found

20   guilty, Mr. Mylnarek by plea and Mr. Balhorn in a bench trial

21   of entering and remaining in a restricted building or grounds

22   in violation of 18 U.S.C. 1752(a)(1), disorderly and

23   disruptive conduct in a restricted building or grounds in

24   violation of 18 U.S.C. 1752(a)(2), and parading demonstrating

25   or picketing in a Capitol building in violation of 40 U.S.C.

1    5104(2)(G).  Mr. Mylnarek also pled guilty to disorderly

2    conduct in a Capitol building in violation of 40 U.S.C.

3    5014(e)(2)(D).

4         All right.  I have received and reviewed the

5    presentence report and sentencing recommendation from the

6    probation department, as well as sentencing memorandum from

7    the government for Mr. Mylnarek and for Mr. Balhorn.

8         Let me first begin with the presentence report.

9    Probation filed the final presentence reports and sentencing

10   recommendations in this matter on February 8th, 2024.  Thank

11   you for the birthday present.

12        Does the government have any objection to any of the

13   factual determinations set forth in either presentence report?

14        MR. KRISHNAMURTHY:  No, Your Honor.

15        THE COURT:  Mr. Mylnarek, are you fully satisfied

16   with your attorney in this case?

17        DEFENDANT MYLNAREK:  Yes, ma'am.

18        THE COURT:  Do you feel that you have had enough

19   time to talk with them about the probation department's

20   presentence report and the papers filed by the government in

21   connection with this sentencing?

22        DEFENDANT MYLNAREK:  Yes, Your Honor.

23        THE COURT:  All right.  Mr. Balhorn, are you fully

24   satisfied with your attorney in this case?

25        DEFENDANT BALHORN:  Yes, Your Honor.

1          THE COURT:  And do you feel that you have had enough

2     time to talk with him about the probation department's

3     presentence report and the papers filed by the government in

4     connection with the sentencing?

5          DEFENDANT BALHORN:  Yes, Your Honor.

6          THE COURT:  All right.  Thank you.

7          Mr. Thompson and Mr. Gay, have you and your client

8     read and discussed the presentence report?

9          MR. GAY:  Yes, Your Honor.

10          THE COURT:  I have noted your objection -- you can

11     be seated.  I have noted your objection to the entirety of

12     paragraph 17 of the PS report, except for the phrase "Mlynarek

13     and Balhorn entered the U.S. Capitol building through the

14     Senate Wing Door at approximately 2:22 p.m."  I have also

15     noted your objection to the last sentence of paragraph 18 of

16     the PSR.

17          Do you have any other objections to the presentence

18     report?

19          MR. GAY:  Yes, Your Honor.  I think there are two

20     outstanding objections with regard to how the guideline is

21     calculated.

22          THE COURT:  Right.  But put that aside.  We'll get

23     to that.

24          MR. GAY:  As to factual, no.

25          THE COURT:  All right.  Are there any other disputed

1    issues of fact?

2              MR. GAY:  Not from us.

3              THE COURT:  All right.  I will accept the factual

4    recitation in the presentence report regarding the

5    circumstances of the offense, except for paragraph 17 and 18.

6    I agree that Mr. Mylnarek did not push or shove his way past

7    the Capitol Police officer.  I am striking paragraph 17 of the

8    presentence report except for the phrase, quote, Mlynarek and

9    Balhorn entered the U.S. Capitol building through the Senate

10   Wing Door at approximately 2:22 p.m., and will not consider it

11   in any way.

12             I do not think the objection to paragraph 18 has any

13   merit, but to avoid any issue I will uphold it.  I'm striking

14   the last sentence of paragraph 18 of the presentence report

15   and will not consider it in any way.

16             Mr. Rollins.  Mr. Rollins, have you and your client

17   read and discussed the presentence report?

18             MR. THOMPSON:  Yes, Your Honor.

19             THE COURT:  Do you have any objections to the

20   presentence report?

21             MR. ROLLINS:  No, Your Honor, other than sort of the

22   factual dispute regarding whether Mr. Balhorn shoved or pushed

23   the police as we indicated in our presentence memorandum.

24             THE COURT:  Okay.  You can be seated.

25             I am not considering in any way, shape, or form an

1    allegation that Mr. Balhorn shoved the police officer.  I

2    don't know if we've had a chance to discuss this before in any

3    of my other cases, but for DOJ's purposes, I feel incredibly

4    strongly that it is nonsensical to sentence someone on

5    acquitted conduct.  I literally do not understand how that is

6    constitutional, even though I understand people smarter and

7    above me have thought that it is.  But for my purposes, unless

8    some court orders me to do it, I am not going to consider

9    acquitted conduct in sentencing.  So, therefore, I am not

10   going to consider any allegation that Mr. Balhorn shoved the

11   police officer in sentencing because I acquitted him on that

12   charge.

13           All right.  Hearing no other objection, I will

14   accept the factual recitation in the presentence report

15   regarding the circumstances of the offense.  And, therefore,

16   the facts as stated in the presentence report will be my

17   findings of fact for the purpose of this sentencing.

18           The presentence report lays out the probation

19   office's calculation of the advisory guideline range that

20   applies in this case.  The guidelines statutory index lists

21   two guidelines for 18 U.S.C. 1752; Guideline 2A2.4,

22   obstructing or impeding officers, and 2B2.3, trespass.  In

23   such cases it is up to the Court to determine which of the

24   reference guidelines sections is most appropriate for the

25   offense conduct charged in the count of which the defendant

1    was convicted.  And that's in guideline 1B1.2 n.1.  As for

2    1752(a)(1), which criminalizes, quote, Knowingly entering or

3    remaining in any restricted building or grounds without lawful

4    authority to do so, both sides agree that the trespass

5    guideline 2B2.3 applies, notwithstanding inconsistencies

6    within the PSRs.

7            I will now turn to Section 1752(a)(2) which

8    prohibits knowingly and with intent to impede or disrupt the

9    orderly conduct or government business or official functions,

10   engaging in disorderly or disruptive conduct in or within such

11   proximity to any restricted building or grounds when -- or so

12   that such conduct, in fact, impedes or disrupts the orderly

13   conduct of government business or official functions.  The

14   government asks the Court to apply 2A2.4, obstructing and

15   impeding officers.  And the defense asks the Court to instead

16   apply 2B2.3, trespass.  The probation office agrees that the

17   government -- sorry, the probation office agrees with the

18   government that 2A2.4 should apply.

19           All right.  Does the government want to be heard on

20   this?

21           MR. KRISHNAMURTHY:  Yes, Your Honor.

22           Your Honor, we could not find a single case where

23   2B2.3 trespass applied for 1752(a)(2).  It's telling that in

24   the most recent case you resolved, Chwiesuik you also found

25   that in that case Count 2, which related to 1752(a)(2), had

1    the applicable base offense of Section 2A2.4, which is a base

2    offense level of 10.

3         Now, there's a strong reason for this.  (a)(2)

4    essentially is a trespass plus criminalization.  If we were to

5    interpret it otherwise for the purpose of sentencing, it would

6    essentially make (a)(2) superfluous.  Even under their

7    framework of looking directly at the indictment paperwork,

8    it's pretty clear that 1752(a)(2) relates to impeding,

9    disruption, disorderly or disruptive, or impedes or disrupts,

10   all language in the indictment language.

11        The fundamental issue here is that if this conduct

12   is only considered trespass, it would mean that disorderly

13   conduct that happens while the trespass occurs could not be

14   articulated in a sentencing context.

15        THE COURT:  So here's my problem, and I'm not being

16   coy.  I might just not understand.  As far as I recall I

17   acquitted them of the interfering with police work charge.

18        MR. KRISHNAMURTHY:  You acquitted them on the 231

19   civil disorder charge.

20        THE COURT:  Okay.  And if I apply the 2A2.4, how am

21   I not basically just sentencing them for conduct that I've

22   acquitted?

23        MR. KRISHNAMURTHY:  Well, so the -- you know,

24   broadly speaking the acquittal for 231 included both the actus

25   reus and the mens rea.  So for Mr. Balhorn I don't think

1    it's -- you know, there's not a question that he touched a

2    police officer.  It's not our case that he shoved him.  We're

3    not asking you to reintroduce acquitted conduct.  What we are

4    asking you to do is consider all of the misconduct that

5    occurred while the trespass was occurring.  Mr. Mylnarek pled

6    to 1752(a)(2), including everything that occurred while he was

7    on restricted grounds.  That includes them coming off the

8    ledge into the scrum.  That includes their actions on the

9    Northwest Terrace.  We're not asking you to reintroduce

10   anything from 231, the felony charge.  We're simply asking --

11           THE COURT:  But what's the element of 231 that you

12   think would allow me to acquit on that charge, but nonetheless

13   I could apply the guideline?

14           MR. KRISHNAMURTHY:  So 231 requires both an actus

15   reus and a mens rea.  For the mens rea aspect there has to be

16   an intent to essentially create a public disorder.  Here the

17   intent requirement that was pled to only requires an intent to

18   impede or disrupt.  You know, specifically talking about which

19   base level offense occurs, it would be -- it would be

20   unprecedented to suggest that 2B2.3 trespass is the only way

21   to articulate this charge.  And I think it's telling that in

22   Mr. Balhorn's own sentencing memo they concede that the base

23   offense level offense is 10 and that 2A2.4 should apply as

24   well.

25           THE COURT:  Well, I don't know that it's

1    unprecedented.  I mean, I have a case where Judge Friedman,

2    which is 21-CR-350, concluded that 2B2.3 was the appropriate

3    charge and not 2A2.4, because 2A2.4 relates to obstructing or

4    impeding officers.  Whereas, the statute is about disrupting

5    or impeding government business or official functions.

6              MR. KRISHNAMURTHY:  Based on that language, I

7    believe he's also talking about 231 there; right?

8              THE COURT:  Right.  He applies -- he applies --

9    sorry he applies 2B2.3 trespass and he says that 2A2.4

10   doesn't apply.

11             MR. KRISHNAMURTHY:  Your Honor, I'm not familiar

12   with that case, but I think we might have cited a similar one

13   from Judge Friedrich.

14             THE COURT:  No, it's Judge Friedman.

15             MR. KRISHNAMURTHY:  Friedman.  Okay.  I am not

16   familiar with that case.  I don't know the facts of case.  The

17   policy --

18             THE COURT:  Can we all pull it up because this is

19   going to be important.  It's ECF No. 76 at 21-CR-350.  And my

20   clerk is about to pass it around, I think.  Do you guys have

21   access to your email?

22             MR. BALLOU:  We're working on it.

23             THE COURT:  You guys know what I'm talking about?

24             MR. GAY:  Yes.

25             THE COURT:  Did you guys cite it?

1          MR. GAY:  I don't believe so, because I think most

2   of what we argued is related to why 2B2.3 should be applied in

3   the trespass context with relation to the indictment as

4   opposed to acquitted conduct.

5          THE COURT:  Okay.  All right.  Well, keep going.

6          MR. KRISHNAMURTHY:  And on that specific point,

7   using their framework, we have to look just at the indictment

8   language.  The indictment language for 1752(a)(2) goes well

9   beyond trespass.  I mean, we can hand you the indictment now,

10  it refers to impeding or disrupting.  It refers to disorderly

11  or disruptive.  And refers to impedes or disrupts.

12         THE COURT:  Okay.  Keep going.

13         MR. KRISHNAMURTHY:  That's all I have to say on

14  this.

15         THE COURT:  All right.  Defense.

16         MR. GAY:  So just briefly I want to address two

17  points, because I'm not going to go back to what we argued in

18  the sentencing memo.  It's pretty clear the Court's familiar

19  with our sentencing memo.  On this Court's prior sentencing

20  and I'm going to butcher the name, and I'm sorry, Cherwick --

21         THE COURT:  I don't know it either.

22         MR. GAY:  That was a stipulated guideline.  They

23  didn't object.  And it was not litigated, which guideline

24  should apply here.  I think it's pretty clear when one does

25  not consider acquitted conduct, trespass is the applicable

1    guideline versus obstructing or impeding officers when no

2    officers are obstructed or impeded.  The conduct at issue -- I

3    mean --

4            THE COURT:  I mean, here's my problem:  Whatever you

5    all were arguing at trial, all sides, it was pretty clear to

6    me that the felony count couldn't stand.  It was not even a

7    close call so far as I was concerned.  And I think -- but I am

8    concerned, and it is going to factor into my decision that the

9    two defendants at numerous points were well aware that there

10   were police and riot gear trying to quell the crowds.  Right.

11   We have video of them up against the wall.  And we have video

12   of them closer to the Capitol.  And notwithstanding that it

13   was patently obvious that they shouldn't be there and that

14   police were trying to quiet the crowd, and that the police

15   were being overrun, they kept going forward into the Capitol.

16           Now, if that's obstruction, if that's trespass, like

17   to me it doesn't really -- one way or the other that's what

18   they were doing.  So how do I encapsulate that in a way that

19   captures that concern without trying them or sentencing them

20   on acquitted conduct?  At the end of the day that's what I'm

21   struggling with.

22           MR. GAY:  And think the answer --

23           THE COURT:  By the way I think practically it's not

24   going to matter, because I think either way I'm going to be

25   well within the guidelines range as to whatever I do.  But you

1    all seem to care a lot about this, so explain to me at the end

2    of the day what I'm supposed to do with that.  Maybe I'll ask

3    the same question of the government when they get back up.

4             MR. GAY:  I think two points on that.  The first is

5    a legal matter versus a factual matter, right, because this

6    court's first obligation is to figure out what guideline

7    applies based on the conduct at issue.  They're suggesting

8    obstructing or impeding officers which has a higher base

9    offense level than trespass.

10            THE COURT:  I mean, they were -- like, I mean, they

11   didn't shove the officers, and they didn't like punch the

12   officers, and they didn't hurt the officers.  But they

13   absolutely knew that they shouldn't be there and that the

14   officers were trying to get people to disperse.

15            MR. GAY:  And I think we would suggest that goes to

16   trespass.  They entered and remained unlawfully with the

17   knowledge they shouldn't be there, as opposed to conduct that

18   was obstructing or impeding officers.  Had they pushed

19   officers, had they had physical contact with officers, I think

20   that would be the appropriate guideline.

21            I recognize that the Court is concerned with factual

22   sentencing as well, though, and I think the facts of this case

23   once the -- like, we're in this difficult position because

24   it's which guideline applies, but the facts stuff spills over

25   into both.  And we recognize that.  And Mr. Mylnarek took

1    responsibility for the fact that he trespassed and that he

2    shouldn't have been there and that he should have left when

3    those officers arrived.  And I think that trespassing

4    guideline takes all that into account.  His acceptance of

5    responsibility takes that into account.  His statement takes

6    that into account.  And this court is to sentence him

7    accordingly.  And --

8            THE COURT:  What's the practical difference if I say

9    that the trespass guideline applies but not the obstruction,

10   so what's the difference?  Like the practical difference?

11           MR. GAY:  Candidly, if this court applies the 6

12   versus 4 offense level and does not apply the increased

13   specific offense characteristic his guidelines remain the

14   same, right, he's at 2 versus a 4, it's still zero to six.

15   He'd be in the same guideline range.  So I can't make a

16   representation if that's what happens it makes a difference.

17   If this Court uses the base offense level of 6 and then starts

18   applying the enhancements that the government suggests we

19   apply and we get to 10, he's then looking at jail -- I mean,

20   this Court could always apply probation based on the -- or a

21   nonincarceratory (sic) sentence based on the guideline range

22   that he's in because he'd still be Zone A, but it does make a

23   difference as to what the guidelines do.  And I think it makes

24   a difference as to what the government's recommendation is,

25   which is currently a period of incarceration.

1          THE COURT:  Okay.  Well, we are going to be talking

2     about incarceration.  So I mean, whether or not that -- I

3     mean, okay.

4          All right.  Why don't I hear from the government

5     again.  Mr. Rollins, do you want to say anything?

6          MR. ROLLINS:  No I'm going to defer to Mr.

7     Mylnarek's counsel.

8          THE COURT:  Okay.

9          MR. KRISHNAMURTHY:  Your Honor, just a few small

10    pithy points.  One can trespass without being disorderly.  I

11    this that's what you're trying to get at, right, it's not

12    like --

13         THE COURT:  I don't think one can trespass without

14    being disorderly.  I think the fact of trespassing is

15    disorderly.  And I imagine that the government would not

16    usually say that one can trespass without being disorderly.

17         MR. KRISHNAMURTHY:  That's why we have these two

18    separate charges, Your Honor.

19         THE COURT:  So are you saying for the record that

20    DOJ's view of the world is that you can trespass, and as

21    you're trespassing not be disorderly, because I have a feeling

22    that your bosses would have a lot to say about that if --

23         MR. KRISHNAMURTHY:  Yeah, let me rephrase what I'm

24    saying.  There is a spectrum of misconduct that needs to be

25    taken into account here.  The 231 offense that they were

1    acquitted on related to the Northwest Terrace only.  There is

2    clear evidence of them coming down a ledge in front of

3    Lieutenant Hackerman, who describes the experience harrowingly

4    during his testimony.  There's photos of them pushing the

5    crowd there.  That conduct was not evaluated for 231

6    whatsoever.

7         THE COURT:  But can't I just talk that all into

8    account on the trespass charge, on the trespass guideline?

9         MR. KRISHNAMURTHY:  You can always, you know,

10   calculate the guidelines and then vary, right.  So, I mean,

11   practically what you think they deserve, what you think is

12   just, will ultimately be true here.  It's important for us to

13   make a distinction here.

14        THE COURT:  Yeah, as you may have heard I'm not

15   always tied to the guidelines.

16        MR. KRISHNAMURTHY:  Of course, yeah.  I mean that --

17   and Mr. Mylnarek in their sentencing memo states that the

18   United States Supreme Court allows you to look at acquitted

19   conduct.  They're not telling you you have to.  Right.  The

20   point of the matter is the full context of their misconduct

21   needs to be brought to bear at sentencing.

22        THE COURT:  It's going to be brought to bear.  It's

23   going to be brought very much to bear.  But I -- I mean we

24   just had this very unique case where I'm very loathe to apply

25   a guideline to conduct which I think I've acquitted.

1          Now, this might just be one of those one off cases

2     where, you know -- in other words, what I'm saying is, if I do

3     not apply the guideline in this case, that does not mean here

4     and going forward I'm never going to apply that guideline to a

5     January 6th case where there's trespass.  I just I'm very

6     concerned about sort of the Venn diagram of where we are in

7     this particular case.

8          MR. KRISHNAMURTHY:  Sure.  And the last thing I'll

9     say is I think the defense is right with their framework and

10    citation to *Boulware,* that we need to look just at the

11    indictment paperwork to make this determination.  If we look

12    just at the indictment paperwork, trespass alone is not

13    captured by this 1752(a)(2) charge.

14          THE COURT:  Okay.  All right.  Anything else?

15          MR. GAY:  No.

16          THE COURT:  All right.  So with respect to the

17    sentencing guideline, the government's position is that

18    obstructing or impeding an officer is the appropriate

19    guideline for 1752(a)(2).  And defendant's conduct more

20    specifically, because the statute requires that the defendant

21    both have engaged in disorderly or disruptive conduct and in

22    fact have impeded government officials conducting official

23    business.  Government memo docket 63 at 26.

24          Defendants disagree.  They argue that the

25    trespassing guideline is more analogous because the guideline

1   is meant to cover a specific victim.  This is not the first

2   time a judge on this court has faced this question.  Judge

3   Friedman was the first to face it in U.S. v. Brodnax,

4   21-CR-350 at ECF 76.  He concluded that the appropriate

5   guideline was 2B2.3 trespass.  He reasoned that 2A2.4 relates

6   to obstructing or impeding officers where the statute is about

7   disrupting or impeding government business or official

8   functions.  Because that defendant's conviction did not

9   directly involve obstructing, impeding, or interfering with

10  law enforcement officers, and 2A2.4 relates specifically to

11  officers, he found that 2B2.3 was the better fit.

12          He also rejected the government's proposed inference

13  that because any obstruction or interference with the orderly

14  conduct of government business or official function

15  necessarily involves a person, the victim is a person.

16  Application Note 3 supports this distinction where it says,

17  quote, the base offense level does not assume any significant

18  disruption of governmental functions and notes that in

19  situations involving such disruption, an upward departure may

20  be warranted.  And the specific offense characteristics also

21  presuppose that the victim must be a person because they

22  include point increases for physical contact and bodily

23  injury.  That the statutory index less both guidelines is best

24  explained by the fact that Section 1752(4) criminalizes

25  physical violence against a person in a restricted building or

1    grounds.

2           Other judges have come out differently, particularly

3    in cases where the defendant's conduct included blatant

4    defiance of and disregard for police officers where the

5    defendant climbed over barriers, or where the defendant was

6    part of the first wave to breach the Capitol.  See e.g.,

7    United States v. Black, 21-CR-127, that's a Judge Jackson

8    decision, docket 98 at 16 to 22.

9           So I think that this is a close call.  And I am

10   concerned, as we are going to be talking about the defendant's

11   disregard of the police officers.  But I think given the

12   acquitted conduct here, I am going to err on the side of the

13   applying the trespass guideline, because I think the facts of

14   this case align better with the trespass guideline.

15          For anyone else who might ever in the future be

16   using this sentencing transcript for any purpose whatsoever,

17   please be aware that this is a very unique circumstance.  And

18   it would be unwise to quote me going forward or rely on this

19   on almost any other fact pattern.  So that is your fair

20   warning.  And if you quote this to any other judge, please

21   make sure this is included in the quotation.

22          Defendants were around police officers trying to

23   settle the crowd and they nonetheless kept moving forward and

24   were ultimately entering the Capitol.  That said, as I noted

25   at the time of the verdict, defendants did not engage

```
1    physically with police officers.  Though the government
2    correctly points out that the standard of proof at sentencing
3    is lower than at trial I will not consider acquitted conduct
4    at sentencing.  I therefore find that U.S.S.G. 2B2.3 applies
5    to both 18 U.S.C. 1752(a)(1) and (2) making the base offense
6    level of 4 for both defendants.
7              Intent to commit a felony offense.  Government where
8    are we on your view on 2X1.1 and whether it applies?  I wasn't
9    sure.
10             MR. KRISHNAMURTHY:  Your Honor, if you unequivocally
11   are not going to take into consideration 231, then I don't
12   know if it's worth hashing the cross reference.
13             THE COURT:  Okay.
14             MR. KRISHNAMURTHY:  I want to be very clear, though,
15   the 231 offense only relates to the Northwest Terrace, there
16   are other, as you just eludicated (sic) there are other
17   instances of disorderly conduct that should be taken into
18   account.
19             THE COURT:  I will take them into account.  I'm just
20   not going to take them into account with the guidelines,
21   because not only -- we just have a difficult situation given
22   what I did at trial, given the acquitted conduct.  And I get
23   it's one part of the Capitol and not the other parts of the
24   Capitol, but we are now like splitting hairs like five or six
25   times sideways.  I'm just going to make this easy.
```

1          MR. KRISHNAMURTHY:  And then the last thing on this,

2     in Mr.  -- and we're -- I assume we're about to talk about

3     this, but I wanted to tee it up, in the sentencing memo by Mr.

4     Balhorn, it's clear we're not disputing that there was kind of

5     a physical altercation on the Northwest Terrace.  What's being

6     disputed is whether or not it was intentional.  And if you

7     acquitted the con --

8          THE COURT:  I mean, physical alt- -- they bumped

9     into each other.  You guys make it seem like it's a brawl.

10    You guys keep doing this.  They bumped into each other.  I

11    mean, he didn't hit him.  He didn't punch him.  He didn't take

12    a 4-by-4 to him.  They literally bumped into each other for

13    literally as I recall the video, less than two seconds.

14         MR. KRISHNAMURTHY:  And this didn't make it into our

15    sentencing memo because you find the best cases after you

16    file, but there is a case in the 6th Circuit that says that

17    the physical contact enhancement does not require

18    intentionality.  We have copies of it.  We presented it to

19    defense last --

20         THE COURT:  I'm not doing it.  I'm just not going do

21    it.

22         MR. KRISHNAMURTHY:  Yes, Your Honor.

23         THE COURT:  You got the unfortunate draw of a judge

24    who feels beyond strongly that it is pure insanity to sentence

25    people on acquitted conduct.  And I'm just not going to get

1   anywhere close to it.  I'm just not going to do it.

2               MR. KRISHNAMURTHY:  Understood, Your Honor.

3               THE COURT:  So you guys agree that given that I'm

4   taking this strident position, before I get overturned on it,

5   that 2X1.1 apply.

6               MR. KRISHNAMURTHY:  Your Honor, correct.

7               THE COURT:  All right.  Okay.  I will now state the

8   guidelines calculation, because the guidelines do not apply to

9   Class B and C misdemeanors the following calculations apply

10  only to Counts 2 and 3 for Mr. Mylnarek and Counts 4 and 5 for

11  Mr. Balhorn.

12              The guidelines calculation is as follows:  For Mr.

13  Mylnarek, the applicable guideline in this case is U.S.S.G.

14  2B2.3, which has a base offense level of 4.  A two-level

15  increase applies because the offense occurred at a restricted

16  building or grounds, U.S.S.G. 2B2.3(b)(1)(A)(7).  Because Mr.

17  Mylnarek pled guilty to all four misdemeanors charged against

18  him and was acquitted of the only charge on which he went to

19  trial, a two-level reduction for acceptance of responsibility

20  is appropriate pursuant to U.S.S.G. 3E1.1.  Therefore, prior

21  to any departures or variances, the total adjusted offense

22  level for Mr. Mylnarek is 4.

23              Offense level for Mr. Balhorn.  The applicable

24  guideline in this case is U.S.S.G. 2B2.3, which has a base

25  offense level of 4.  A two-level increase applies because the

offense occurred on a restricted building or grounds.
Therefore, prior to any departures or variances the total
adjusted offense level for Mr. Balhorn is 6.

Are there any objections, other than what we
discussed, to the calculation of the offense level?

MR. KRISHNAMURTHY:  No, Your Honor.

MR. GAY:  No, Your Honor.

MR. ROLLINS:  No, Your Honor.

THE COURT:  All right.  Turning to the applicable
Criminal History Category, the presentence report has found
that Mr. Mylnarek has a Criminal History score of 1 and
therefore is being designated in Criminal History Category I.

As for Mr. Balhorn the presentence report has found
that he has a criminal history score of zero, and therefore is
being designated in Criminal History Category I.

Given that Mr. Balhorn has zero criminal history
points the probation office applied a two-point level
reduction pursuant to Section 4C1.1.  The government objects
to the two-point reduction.  Everyone agrees that the
reduction does not apply to Mr. Mylnarek because he has a
criminal history point.  Guideline 4C1.1 applies to offenders
with no criminal history points who meet specific additional
criteria.  Though Mr. Balhorn meets all ten criteria, the
government argues that the reductions should not apply because
Mr. Balhorn pushed a police officer, January 6 was a violent

attack, to which each individual, whether they personally engaged in violence or not contributed, and given that January 6th was unprecedented, the recidivism data upon which the guideline is based is not probative. Government memo, docket 63 at 34 to 36.

At trial I repeatedly disagreed with the government's claim that Exhibit 317 shows Mr. Balhorn shoving a police officer. Because my view of the evidence has not changed, I do not find that Mr. Balhorn used violence in connection with the offense. Further, because Mr. Balhorn did not himself act violently, the Court does not see how the government's other arguments relate to the 4C1.1 criteria.

The argument that because January 6 was unprecedented, the recidivism data upon which the guideline is based is not predictive cuts both ways. The very fact that it is unprecedented arguably makes it unlikely -- hopefully makes it unlikely that a defendant with no criminal history will engage in future criminal conduct. And Mr. Balhorn meets all ten of the applicable criteria. So the Court will apply the two-point reduction, decreasing his offense level from a 6 to a 4. Are there any objections to the criminal history calculation?

MR. KRISHNAMURTHY:  No, Your Honor.

MR. GAY:  No, Your Honor.

MR. ROLLINS:  No, Your Honor.

1          THE COURT:  All right.  Based on the offense level

2     and Criminal History Category I, I have just -- sorry, based

3     on the offense level and Criminal History Category I have just

4     discussed, the presentence report calculates the initial

5     advisory guidelines range for both defendants to be zero to

6     six months of imprisonment.

7          I should note that applying guideline 2A2.4  would

8     not have changed this range or the sentence I will give

9     momentarily.

10          Having determined the applicable guidelines range,

11     the next step for me is to consider departures.  Neither PSR

12     includes departure grounds that are not adequately considered

13     in the guidelines.  The Court agrees and will apply no

14     departures.

15          Are there any objections to the guidelines framework

16     and calculation?

17          MR. KRISHNAMURTHY:  Your Honor, I think there is

18     basis to vary, based on the underlying facts.  And I have a

19     few pithy comments on that, I don't know if you're ready for

20     them now --

21          THE COURT:  We'll get to all that, so save your

22     pithy comments.  I'm just looking at the guidelines right now,

23     putting aside variances, which I'll give you plenty of time to

24     discuss.

25          MR. GAY:  No objections as to departures.

1          MR. ROLLINS:  No objection.

2          THE COURT:  All right.  Now 18 U.S.C. 3553 requires

3    me to consider a variety of factors, including the sentencing

4    range the guidelines prescribe, which I have just discussed

5    and will discuss in more details below, and the applicable

6    penal statutes.

7          The charges of entering and remaining in a

8    restricted building or grounds in violation of 18 U.S.C.

9    1752(a)(1) and disorderly and disruptive conduct in a

10   restricted building or grounds in violation of 18 U.S.C.

11   1752(a)(2) carry a statutory maximum of one year, that is 12

12   months imprisonment.  The charges of disorderly conduct in a

13   Capitol building in violation of 40 U.S.C. 5104(e)(2)(D) and

14   parading demonstrating or picketing in a Capitol building in

15   violation of 40 U.S.C. 5104(2)(G) carry a statutory maximum

16   term of six months imprisonment.

17         As set forth above, based on a total offense level

18   of 4, and a Criminal History Category of I, the guideline

19   imprisonment range is zero to 6 months.

20         With respect to supervised release, the Court may

21   impose a term of supervised release of not more than one year.

22   The guideline range for a term of supervised release is also

23   one year.  If a sentence of imprisonment of one year or less

24   is imposed, a term of supervised release is optional.

25         With respect to probation the defendant is eligible

1    for not more than five years probation with multiple terms of

2    probation running concurrently.  Under the guidelines, if

3    probation is imposed, the term shall be no more than three

4    years because the offense level is not six or greater.

5            Fines, 18 U.S.C. 1752(a)(1) and (2) carry a

6    statutory maximum fine of $100,000.  40 U.S.C. 5104(e)(2)(D)

7    and (G) carry a statutory maximum fine of $5,000.  At offense

8    level 4 the guidelines set the fine range between 500 and

9    $9,500.  A special assessment of $25 is mandatory for 18

10   U.S.C. 1752(a)(1) and (2).  And special assessment of $10 per

11   count 40 U.S.C. 5104(e)(2)(D) and (G).  The Court may order

12   restitution in this case pursuant to 18 U.S.C. 3663(a) because

13   neither defendant has entered into a plea agreement in this

14   case.  That amount is to be determined by the Court.

15           All right.  Are there any objections to everything I

16   have just said, to the statutory and guidelines framework I've

17   described above.

18           MR. KRISHNAMURTHY:  No, Your Honor.

19           MR. GAY:  No, Your Honor.

20           THE COURT:  All right.  Before I discuss the other

21   sentencing factors that will bear on my final decision, I will

22   at this point notify the parties of the particular sentence

23   the probation office has recommended, taking into account the

24   guidelines range, the available sentencing, and all of the

25   factors in 3553(a).

1        As to Mr. Mylnarek, the probation office recommends

2   18 months of incarceration for Counts 2 and 3, and six months

3   incarceration on Counts 6 and 7 -- sorry.  Sorry, as to Mr.

4   Mylnarek recommends 8 months incarceration for Counts 2 and 3

5   and six months incarceration on Count 6 and 7.  The probation

6   office recommends that the terms of incarceration run

7   concurrently totaling eight months incarceration.  12 months

8   of supervised release, $2,000 fine, $2,000 restitution, and

9   $70 in mandatory special assessment.

10        As to Mr. Balhorn, the probation office recommends

11   12 months incarceration for Counts 4 and 5 and 6 months

12   incarceration on Count 7.  The probation office recommends

13   that the terms of incarceration run concurrently totaling 12

14   months incarceration.  12 months of supervised release, $5,000

15   fine, $60 mandatory special assessment.  The recommendation of

16   the probation office is not based on any facts or

17   circumstances that have not already been revealed to the

18   parties in the presentence report.

19        All right.  Come up with your pithy comments.

20        MR. KRISHNAMURTHY:  Your Honor, I think I can keep

21   this to two minutes.

22        THE COURT:  You have as much time as you want.

23        MR. KRISHNAMURTHY:  Sure.  I want to talk about why

24   incarceration is particularly important for Mr. Balhorn here.

25        So looking back at the last litigated January 6

1    sentencing case you handled, which was the Chwiesuik case, you

2    stated that you wanted to make it as painful as possible

3    without putting them in prison.  We took that to mean that

4    that was somewhat of an education.  And we think this case

5    goes further than that.

6                THE COURT:  No, I agree with that.

7                MR. KRISHNAMURTHY:  Particularly, for Mr. Balhorn.

8    Three reasons why it goes further.  First, their underlying

9    conduct is more severe in this case.  Put aside the acquitted

10   conduct, I just want to quote you again, "I do not find

11   credible that he didn't know that there were police in front

12   of him when he was standing on that ledge."  You know, we're

13   not asking -- we didn't ask for an obstruction of justice, you

14   know, enhancement here, but it's something that you should

15   take into account.

16                The collateral consequences are different here as

17   well.  Mr. Chwiesuik was a police officer.  He was put on

18   unpaid leave.  Mr. Balhorn runs his own business.  It will be

19   back when he gets out of prison, should you incarcerate him.

20                And then finally, we haven't talked about this at

21   all, Mr. Balhorn is not a good candidate for probation,

22   because he has repeatedly violated his conditions of release.

23   Eight times specifically, once post conviction.  It's telling

24   that in Mr. Mylnarek's sentencing memo they emphasize that he

25   was consistent with his conditions of release.  And it's

1    something that you foot stomped in the Chwiesuik case as well.
2    So --
3         THE COURT:  I foot stomped?
4         MR. KRISHNAMURTHY:  Foot stomped.  It's a term from
5    an old job of mine, you emphasized that --
6         THE COURT:  I don't think I foot stomped, what old
7    job?
8         MR. KRISHNAMURTHY:  I was in the military.  There's
9    some lingo I'm trying to lose, but you emphasize --
10        THE COURT:  In the future I would suggest you not
11   tell me that I foot stomped.
12        MR. KRISHNAMURTHY:  Duly noted, Your Honor.  Given
13   those differences between this and Chwiesuik, we believe
14   particularly with Mr. Balhorn, the employer of Mr. Mylnarek,
15   essentially a mentor/mentee relationship here, the person who
16   brought him to the Capitol, deserves some sort of qualitative
17   difference particularly with respect to incarceration.
18        THE COURT:  Well, do you also believe that Mr.
19   Mylnarek deserves prison time?
20        MR. KRISHNAMURTHY:  We do, but if you're inclined to
21   give Mr. Mylnarek just probation --
22        THE COURT:  I'm not inclined to give him just
23   probation.
24        MR. KRISHNAMURTHY:  We're not withdrawing our
25   recommendations at any point in time.  We just wanted to try

1    to qualitatively differentiate these two co-defendants.

2         THE COURT:  Okay.

3         MR. KRISHNAMURTHY:  Thank you.

4         THE COURT:  All right.  Here's my problem --

5         MR. GAY:  Okay.

6         THE COURT:  So, every -- and I think I actually

7    talked about this at the Littlejohn sentencing, which was not

8    a January 6 case, but every person I have sentenced to date on

9    January 6th had no intent to go into the Capitol, did not come

10   to the rally with the intent to go into the Capitol.  Went

11   into the Capitol, as the second wave, did not pass -- was not

12   involved in, was not around lines of police officers trying to

13   dispel crowds.  Went in, came out.  And I said -- well, I

14   don't know if I've said repeatedly, but I've said that I'm not

15   going to put people in prison for basically getting caught up

16   when it happened, going into the Capitol and coming out,

17   especially people with no criminal history grounds.

18        Your clients are differently situated.  Your clients

19   at various points were right literally face to face with

20   police officers in riot gear.  And not once, but twice.  And

21   on each of those occasions, they kept going forward into the

22   Capitol.  They absolutely knew that they weren't supposed to

23   be there.  They absolutely knew that there were riot police

24   trying to get people to disperse.  They knew all that before

25   they went into the Capitol.  I don't know that there can be a

more blatant violation of the law.  And it was a blatant
violation of the law in aid of an insurrection.  So I don't
see how I can not put them in prison for a period of time.

MR. GAY:  So at the outset I want to differentiate
Mr. Mylnarek from Mr. Balhorn.

THE COURT:  Just, you know what, you can -- I'm
going to let you speak as long as you want.  I'm going to let
your client speak.  From my perspective there is not much of a
differentiation.  They were both there.  They were both with
the police officers in front of riot gears.  I don't care that
one of them bumped into a police officer and the other didn't.
I could care less about that.  What I care about is that they
absolutely were part of an insurrection and they knew that
they were part of an insurrection, and both of them.

MR. GAY:  And when I differentiate that I only do so
because there are differences about them that I can't speak to
about Mr. Balhorn.  I'm not going to go into why their conduct
ought to be forgiven, other than the fact that Mr. Mylnarek
did plead guilty.  He accepted responsibility for his conduct.
He admits he was involved in this.

THE COURT:  Well, Mr. Balhorn at the end of the day,
finally by closing, admitted guilty to one of the charges.

MR. GAY:  I'm not -- the only reason I'm
differentiating is because Mr. Mylnarek is my client.

THE COURT:  Fair.

1          MR. GAY:  And He's 26 years old.  I'm sorry, he's 28

2    now.  He was 26 at the time.  The government talks about his

3    lack of remorse.  He pleaded guilty.  He's been compliant with

4    all of the conditions of his probation.  He is a young man who

5    is a hard worker, who has consistently maintaining employment

6    throughout his young life upon graduating from high school.

7          THE COURT:  Yeah, and that's why I hate these cases.

8    That's why these cases drive me absolutely up the wall.

9    Because he's otherwise a law abiding citizen.  But he was not

10   a law abiding citizen on January 6th.  He was blatantly

11   violating the law in front of police in riot gear trying to

12   disperse an insurrection.

13         MR. GAY:  He has admitted that he did a dumb thing.

14   I'm not going to --

15         THE COURT:  How do I not put someone in jail who did

16   that?

17         MR. GAY:  Becase I think there are alternatives to

18   incarceration that can -- I understand that in the past this

19   Court has had a dialogue with the government about whether

20   probation is a worthy punishment or what -- what punishment

21   ought to fit the crime.  And I think here incarceration

22   doesn't serve to do anything and I'm going to give you a few

23   reasons.

24         The first is that he's gainfully employed and a

25   period of incarceration means he's going to lose his job.

He's going to lose his housing.  He's going to be without

communicating with his family.  I think the point of

deterrence is both general and specific.  I think the

government's done a great job of general deterrence by

prosecuting all of these cases.  And I think specifically, as

it goes to Mr. Mylnarek, he understands that he made a big

mistake, which is why he pled guilty.

THE COURT:  He didn't just make a big mistake.  He

was part of an insurrection.  We're not in mistake category

anymore.  We're not in like oops anymore.  We're not in, you

know, I was a dumb frat kid.  We're beyond that.  We're well

beyond that.  This was not just a mistake.  This was part of

an insurrection.  This was part of an attack on our democratic

government.  And he didn't -- you know, like, I agree with the

government, the Chwiesuik, I struggled.  You cannot believe

how much I struggled with that decision.

MR. GAY:  You can see it in the minutes.

THE COURT:  It was a very close case.  This one is

not close.

MR. GAY:  So my suggestion for the Court is if the

Court is inclined to give Mr. Mylnarek a period of

incarceration, that this Court gives him intermittent

confinement so that he can serve that period of incarceration

on weekends so that he can continue to work, to continue to

maintain his housing, to continue to maintain the things that

1    he will lose if he is incarcerated.

2              THE COURT:  What's his current job?

3              MR. GAY:  I'm sorry?

4              THE COURT:  What's his current job?

5              MR. GAY:  He works in demolition.  I can give the

6    name of his employer, but he works in construction demolition.

7    He's developing a specialized skill as a 26-year-old man with

8    a high school diploma.  He's gone out of his way to continue

9    to make a life for himself that if he is incarcerated for a

10   period of time, he will lose.  And I recognize that that --

11             THE COURT:  You know, what if they were all

12   successful in what they wanted to do, we would have lost

13   democracy.  So I'm sorry if he might lose his job.  He wanted

14   us to lose democracy.

15             MR. GAY:  I don't want to quibble over his intent,

16   so I'm not going to go into, you know -- the Court is right

17   there were police officers in riot gear there telling people

18   to leave.  He didn't leave.  He walked the Capitol.  We admit

19   all of that.  This Court still has to fashion a sentence that

20   is just.  And it's our position that incarc- --

21             THE COURT:  How can it possibly not be just to

22   imprison people who ignore police in riot gear.  Police in

23   riot gear who were engaged with other people.  I mean, as I

24   recall at one of the places, not when they were up against the

25   wall, but when they were closer to the government, like

1     somebody fell or there was some interaction, like some

2     physical interaction between others and the police officers

3     and they just kept going.

4              MR. GAY:  Yes.  My recollection is that he picked

5     up, but I understand the Court's point about continuing on

6     when it's clear that things need to be stopped.  And, you

7     know, I'm going to draw a point and I don't know that it's

8     going to matter, frankly, but I'm just going to say it any

9     way, this wasn't a plan on behalf of Mr. Mylnarek's part --

10             THE COURT:  It wasn't a plan on either of them.  I

11    get that.  I get that they went to the rally and -- they ended

12    up at the Capitol.  They did not plan to participate in an

13    insurrection.  But at least by the time that they passed -- at

14    the very least by the time they passed the first line of

15    police in riot gear, they knew that they were part of an

16    insurrection.  They absolutely knew it.  They absolutely knew

17    that that's what was happening.

18             MR. GAY:  I would suggest that they knew they should

19    have turned around.  I don't know that they knew they were

20    part of an insurrection.

21             THE COURT:  They were overrunning the United States

22    Capitol, what on earth would you be doing other than being

23    part of an insurrection if you're overrunning the U.S. Capitol

24    with thousands and thousands of other people.

25             MR. GAY:  I agree with you, it's not good.  Right.

1    It's not -- I just I think to suggest that he had an intent to

2    over -- overrun the government, he's part of a group of people

3    who are moving past police --

4            THE COURT:  He was part of a group of people who

5    were at a very minimum rioting at the U.S. Capitol.  And I

6    think any intelligent human being would adduce in about three

7    seconds of looking at video were part of an insurrection.

8            MR. GAY:  I think it's -- I don't know that I agree,

9    but I certainly see where the Court is coming from.  And he

10   certainly -- he certainly understands that he should not have

11   been there and involved in this.  And it's not something he

12   will ever get himself involved in again.  And I recognize the

13   Court's struggle with fashioning an appropriate sentence here.

14   And, you know, the Court makes a lot of reference to the terms

15   of community service in prior sentences --

16           THE COURT:  Well, they're going to get that too,

17   don't worry.

18           MR. GAY:  Being something that the Court directs

19   supervision over out of this courtroom.  And I think we all

20   agree that that would be a good thing here.  I think -- and

21   like we said, a period of incarceration will serve to damage

22   him more than it will help him, because he's going to lose --

23           THE COURT:  That's the point of punishment.  The

24   point of punishment isn't to help people.

25           MR. GAY:  Right.  I get it.  Yeah.

```
 1              Okay.  We would ask the Court for probation
 2     recognizing that the Court is looking to fashion a sentence
 3     that somehow balances all of those things.  And if that's the
 4     case, then we would ask for intermittent confinement so that
 5     he can continue to maintain employment, his home, and see his
 6     family.  And we would ask that the Court allow him to
 7     self-surrender so that he can go to a prison that is closer to
 8     his home, because he resides in Michigan and sentencing him
 9     here is going to make it extremely difficult for his family to
10     visit him.  Thank you.
11              THE COURT:  Do you all have recommendation of places
12     to send them?
13              MR. GAY:  Yeah, Milan.  At least for Mr. Mylnarek.
14              THE COURT:  Okay.  We'll get to that.
15              Mr. Rollins.
16              MR. ROLLINS:  Yes, I'm going to try to taper my
17     arguments seeing where the Court's headed.  But in terms of
18     this insurrection and sort of putting them all in the same
19     boat, because of the Court's view of what was taking place --
20              THE COURT:  It's not my view of what was taking
21     place.  It's not like I just dreamed it up.  It's not like I'm
22     a novelist and I like came up with a scene and this is how I
23     painted the picture.  It is what happened.  It's not just my
24     view of what happened.  It's not what a bunch of woke people
25     are saying happened.  It's not what MSNBC is saying is
```

1    happening.  It is what happened.

2            MR. ROLLINS:  Yes, but I want the Court to

3    appreciate the level of sophistication on each person, and so

4    while you can say there's an insurrection taking place, and

5    anybody with some level of sophistication could realize that

6    an insurrection is taking place, that's not so for Mr.

7    Balhorn.

8            THE COURT:  It is not credible.  It is not credible,

9    Mr. Rollins.  It is not credible that intelligent human

10   beings -- it's not even credible that unintelligent human

11   beings would be up against police in riot gear repeatedly,

12   trying to keep people from entering the U.S. Capitol, and that

13   they kept going and they thought that was not part of an

14   insurrection.  It's just not credible.

15           MR. ROLLINS:  So if the Court remembers, one of the

16   videos where they actually entered.  And I think they entered

17   at 2:22.  But if you look at the video when they entered, this

18   isn't a situation where the police officers are being trampled

19   and being taken over --

20           THE COURT:  No, but -- stop.  No, because they

21   already passed that.  They passed that on the lawn.  They had

22   passed that on the other side of the Capitol.  They went in

23   through a place where there were, as I recall, alarms were

24   blaring, I don't remember if there were windows that were

25   bashed out or not.  But I mean, yeah, they weren't at the

1    trampled police officers, because they had already passed the

2    trampled police officers by.

3            MR. ROLLINS:  Well, no, there were still police

4    officers still standing by.  And they are all walking in there

5    single file, kind of walking in together into the doors.

6    They're not the -- and they're not the ones who were bashing

7    through the doors.  They're literally -- I don't want to call

8    it following the crowd, but that's a lot what was happening

9    here is they were basically like, oh, everyone else is going

10   in, we go in.  These weren't the -- in terms of the

11   insurrectionists these weren't the people that were bashing

12   down the doors and creating destruction and hurting people.

13   That wasn't so here.  And I think that makes a huge difference

14   in the Court's calculation of what should happen here.

15           Now, Mr. Balhorn, as you've recognized has -- just

16   doesn't make any sense, which is probably why it is one of the

17   harder cases for you to sentence, because you've got a

18   54-year-old man who's literally never been a trouble a day in

19   his life, and who's law abiding, respects police officers, but

20   on that --

21           THE COURT:  No, he doesn't.  He doesn't.  No, I am

22   sick of it.  I am sick of people telling me they respect

23   police officers when they go past police officers in riot gear

24   and ignore everything the police are telling them to do.  I am

25   sick of saying defend our boys in blue -- I'm sick of people

1    saying that who go and disparage what the police officers do,

2    ignore what the police officers do, and put the police

3    officers in danger.

4            Now, they did not attack police officers, but they

5    put police officers in danger.  Because every police officer

6    was being overrun by a group of people.  And the group of

7    people is made up of individuals.  And there were so many

8    people that police got trampled.  Now your clients didn't

9    trample the police officer, but they were part of the group

10   that made that possible.  Not that they were intending to do

11   it, but because there were so many people it happened.

12           MR. ROLLINS:  Right.  But it just sounds like

13   they're being punished --

14           THE COURT:  They're being punished for being part of

15   an insurrection.  They're being punished because they entered

16   the U.S. Capitol after ignoring two different sites where

17   police officers in riot gear were trying to disperse the

18   crowd.  And any idea they are being punished for what other

19   people did or for what their beliefs were or anyone else's

20   beliefs is in tension with the facts and is in tension with

21   reality.

22           MR. ROLLINS:  I understand the Court's concern.  Let

23   me just address a few of the other issues.  I guess one of the

24   issues that's standing out is the government keeps relating to

25   violating conditions of release while this case is pending.

1    That was -- that's never been his position.  And I think you

2    read our opposition.  He doesn't have an issue with drugs.  I

3    understand the Court said you're not allowed to be around

4    marijuana, smell it, whatever, and it's -- he's not been

5    trying --

6              THE COURT:  I'm not going to -- none of that is

7    going to enter into my decision making.  I could care less

8    about all that.

9              MR. ROLLINS:  All right.  And then the final

10   argument was the mentor/mentee relationship.  I'm hoping the

11   with court doesn't look at that as sort of saying that Mr.

12   Balhorn was in a more superior role than Mr. Mylnarek.

13             THE COURT:  No, they both knew exactly what they

14   were doing.

15             MR. ROLLINS:  So with that respect then I would just

16   ask the Court to consider the totality of his life and looking

17   at the totality of his entire life up until 54.  And while,

18   yes, in criminal court we usually sit in here on the one

19   mistake someone's made, but don't judge him by that one

20   mistake he's made his entire life, but look at the entire

21   picture of this man that has lived a good life the last 54

22   years.  And I'd ask the Court to look at that in its

23   entirety.

24             THE COURT:  All right.  Thank you.

25             Would either of the defendants like to speak?

1          DEFENDANT BALHORN:  No, thank you.

2          DEFENDANT MYLNAREK:  No, thank you, Your Honor.

3          THE COURT:  All right.  Government, do you have

4    anything else?

5          MR. KRISHNAMURTHY:  No, Your Honor.

6          THE COURT:  All right.  I'm going to take a -- I'm

7    going to take an 11 minute break.  We'll be back at 10:35.

8          (A recess was taken from 10:24 a.m. to 10:35 a.m.)

9          THE COURT:  All right.  After calculating the final

10   advisory guidelines range and hearing the statements of

11   counsel, I must now consider the relevant factors set out by

12   Congress in 18 U.S.C. 3553(a) and ensure that impose a

13   sentence sufficient but not greater than necessary to comply

14   with the purposes of sentencing.

15          These purposes include the need for the sentence

16   imposed to reflect the seriousness of the offense, to promote

17   respect for the law, and to provide just punishment for the

18   offense.  The sentence should also deter criminal conduct,

19   protect the public from future crimes by the defendant, and

20   promote rehabilitation.  In addition to the guidelines and

21   policy statements and the purposes of sentencing I must also

22   consider the nature and circumstances of the offense, the

23   history and characteristics of the defendant, the kinds of

24   sentences available, including the applicable guidelines, the

25   need to avoid unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct.  And the need to provide restitution to any victims of the offense.  I have considered all these factors when deciding what the appropriate sentence is in this case and will discuss a few of them now.

Mr. Mylnarek and Mr. Balhorn were found guilty of misdemeanor offenses.  That said, I don't want to minimize their conduct and their role in the events of January 6th, 2021.  They encountered police lines first on the West Plaza and later on the Northwest Terrace.  They saw rioters engage with the police.  They saw police trying to prevent people from reaching an entrance to the Capitol.  And they knew police were attempting to quell the crowd.  They disregarded the officers, kept moving forward, and entered the Capitol any way, through a door with punched out glass at that.  They were on Capitol grounds for almost an hour and inside the Capitol itself for 28 minutes.  All of this is, putting it mildly, extremely concerning.

But I also recognize that they were not part of the first wave of people to enter the Capitol, didn't engage in any violent conduct, and didn't destroy property.  Surely, had they had done those things they would have faced more serious charges.  But I must recognize that this conduct was less severe than some of the other conduct that occurred at the Capitol, and even the conduct by some others convicted of the

1    same offenses.

2         The most difficult part of my job is imposing

3    sentence and especially in the January 6 cases where there are

4    so many people involved.  I try very, very hard to view each

5    defendant as an individual, not just as somebody who was a

6    rioter or insurrectionist, but who has a complex life and

7    history.  Because the system, the system of due process, and

8    presumption of innocence, inherence to the Constitution is

9    really the system that the group of you were trying to

10   overthrow on January 6th.  And this same system has bent over

11   backwards to give every January 6 defendant every single right

12   that they are entitled to under the Constitution.

13        So last night I was at a Caps game.  And before

14   every professional sporting event you stand while they sing

15   the national anthem.  And I am manic about standing for the

16   national anthem.  If I am home alone watching a sports game

17   and they show the national anthem, I stand.  I stop whatever

18   I'm doing and I stand.

19        And the reason I do that, and the reason I'm

20   thinking about the national anthem in the context of a

21   sporting event, is because there are rabid fans of sports

22   teams.  I'm a rabid Red Sox fan.  And you have two teams going

23   at each other and two fan bases going at each other.  And

24   someone's going to win and someone's going to lose.  But the

25   reason that we sing the national anthem at the beginning of

the games, or one of the reasons, it because it reminds us
that we are all at the end of the day Americans.  That at the
end of the day whatever or personal beliefs, whatever our
personal fandoms, we are Americans.  And that means something.
And it means something that we have a democratic process.  It
means something that we are a country that for over 200 years
has had a peaceful transfer of power and a democratic process.
It is unparalleled in human history what we have.

No one would have sang the national anthem before
the insurrection, because the insurrection wasn't about us
being Americans.  It wasn't about us having different
viewpoints but nonetheless agreeing that we are all part of
one politic.  It was about the opposite of that.  It was about
trying to destroy or democratic system because one side didn't
like that the other side won.  That's what happened.  And
anyone who tries to convince themselves or others otherwise is
just being willfully blind to reality.  And it continues to
put our democracy at risk.

And you know, I -- I keep hearing from people that,
oh, we were rising up against tyranny and the founding fathers
would have been with us.  The founding fathers would have
applauded everything that was happening on the grounds on
January 6th, which would be quite the shock to the founding
fathers, who were very, very clear that they were rising up
against not having representation, about rising up against not

being able to have a say in their democratic form of
government, or any government.  They didn't have a say.  That
was the beef.

       But the founding fathers were also quite clear that
once they put a constitution in place, once there was a system
in place that gave everyone a voice, that gave everyone
rights, and gave everyone ways to express their voice, then
what you had to do was follow the law.  George Washington said
that in his farewell address.  That was the basis for the
*Federalist Papers*.  Lincoln said that over and over and over
again.  You don't get to cloak yourself in the words of the
founding fathers as you're going up and trying to overturn the
very system of democracy that they worked -- that they fought
a war -- that we actually fought two wars, the independence
war and the civil war, to keep in place and protect.

       And you know, the whiskey rebellion, don't know how
many of you know whiskey rebellion, but it was a January 6
type rebellion.  It wasn't at the Capitol.  And it wasn't
about an alleged stolen election that, by the way, was not
stolen.  It was about Hamilton putting tax on whiskey.  And
there was an actual revolt against the United States.  It was
a rebellion against the United States' form of government.
And according to a lot of people who think the founders would
be all happy about January 6th, apparently Washington and
Hamilton just sat back and were happy that the rebellion

happened and just let it go forth.

But of course they didn't.  Washington didn't turn to Hamilton and was like, yeah, that was a really bad idea increasing the tax of whiskey, of course they're rebelling. They should rebel.  No, Washington sent in troops to quell the rebellion.  And dozens of people were tried for treason.  And it was one of the first manifestations of the power of our government was quelling the whiskey rebellion.  It is one of the points in our history which codified the fact that we have a national government, that we have resources, that we have a military who will support our democratic system of government. And to have thousands of people try to upend that system because of one person, because of their belief in one person, is anathema to everything this country stands for.

Police officers died as a result of what happened on January 6th.  People's lives, who were trying to protect our democracy -- people died, people's lives were ruined.  We have had countless officers testify about how this negatively impacted if not destroyed their lives and livelihoods.  That's the nature of the offense that we're dealing with today.  And anyone who believes otherwise continues to be a threat to our democracy.

Defendants' history and characteristics starting with Mr. Mylnarek, while Mr. Mylnarek has a prior conviction of operating a vehicle while impaired, there is nothing in his

1    record to suggest that he takes the law lightly.  The fact

2    that he took responsibility for his actions in this case

3    reflects that.  I note that he is close with his family.  He

4    is gainfully employed.  I also note that he has been under

5    court supervision for several months and has been in full

6    compliance with his release conditions.  I take all of that

7    into consideration.

8             Mr. Balhorn, I recognize that Mr. Balhorn has no

9    criminal record.  Despite dropping out of high school he has a

10   successful career as the co-owner of a demolition company.  He

11   has strong relationships with his father and with his partner

12   of 15 years.  I also note that he has been under court

13   supervision for several months.  And that aside from marijuana

14   use, which he has denied, he has been in compliance with his

15   release conditions.  All of this I will also take into

16   consideration.

17            The kinds of sentences available and the sentencing

18   range established by the guideline.  I stated earlier the

19   kinds of sentences available.  And I will summarize them again

20   here.  18 U.S.C. 1752(a)(1) and (2) carry a statutory maximum

21   of one-year imprisonment and a fine of up to $100,000, a

22   special assessment of $25 per count is mandatory.

23   18:5104(e)(2)(D) and (G) carry a statutory maximum of six

24   months of imprisonment and a fine of up to $5,000.  The

25   statute considers a probationary term of years with multiple

1    terms of probation running concurrently.  A special assessment

2    of $10 per count is mandatory.

3            I also have to consider the guidelines range

4    determined here to be zero to six months of imprisonment and

5    the purposes of sentencing, among other factors as I've

6    previously mentioned.

7            Under the guidelines, because the offense is in zone

8    A of the sentencing table, and Chapter 2 of the guidelines

9    does not require otherwise, a sentence of imprisonment is not

10   required.  U.S.S.G. 5C1.1(b), and probation may be imposed

11   with or without a condition requiring a period of community

12   confinement, home detention, or intermittent confinement.

13   That's 5B1.1.  I have considered all these kind of sentences

14   and the guidelines in determining which sentence to impose

15   here.

16           The need to avoid unwarranted sentencing

17   disparities.  I have sentenced defendants on similar charges

18   who did not do as much as Mr. Balhorn and Mr. Mylnarek did.

19   In some cases the defendants went in the Capitol for a minute

20   or two and then left.  This is not one of those cases.

21   Defendants were on Capitol grounds for just under an hour and

22   inside the Capitol for 28 minutes.  Nor is this case analogous

23   to my recent sentencing in U.S. v. Chwiesuik in which I

24   sentenced the defendants to 36 months probation, 90 days of

25   home detention, 200 hours of community service, and $500

1    restitution.

2          Though convicted on the same charges as Mr. Mylnarek

3    and Mr. Balhorn, the Chwiesuiks did not encounter police

4    outside the Capitol.  And when an officer inside the Capitol

5    asked them to leave, they immediately did so.  In contrast,

6    the evidence here shows that Mr. Mylnarek and Mr. Balhorn

7    encountered officers trying to stop advancing protesters,

8    first on the West Plaza and then again on the Northeast

9    Terrace.  Rather than turn around and leave, defendants pushed

10   forward and entered the Capitol.  They knew police were trying

11   to stop the advancing crowd.  They saw others engaging with

12   the officers.  They knew the officers were in riot gear.  They

13   knew they were not supposed to enter the Capitol and they

14   moved forward any way.

15         A few case stand out to me as analogous first in

16   U.S. v. day non 21-CR-730, Judge Kotelly sentenced the

17   defendant convicted of similar charges to 90 days

18   incarceration, 24 months supervised release, and $500

19   restitution.  There, the defendant disregarded both police in

20   riot gear and area closed signs and entered the Capitol any

21   way.  She was the Capitol building for approximately 90

22   minutes, but remained on restricted grounds for another 40

23   minutes thereafter.

24         And in U.S.A. v. Brodnax, which I mentioned earlier,

25   Judge Friedman sentenced a defendant convicted of similar

charges to five months incarceration, 12 months supervised
release, and $500 restitution.  Mr. Brodnax entered the
Capitol around the same time as Mr. Mylnarek and Mr. Balhorn.
He was part of a group that pushed past a police line, though
was several feet back from the line and never made physical
contact with an officer.  Though, I note that Mr. Brodnax had
more criminal history than Mr. Mylnarek or Mr. Balhorn.

I have also looked at the U.S. Sentencing
Commission's judiciary sentencing information database, which
collects sentencing data from across the federal judiciary.
During the last five fiscal years there were 30 defendants
whose primary guideline was 2B2.3, with a final offense level
of 4 and a Criminal History Category of I.  After excluding
defendants who received a 5K1.1 substantial assistance
departure.  Of those 30 defendants 18 or 60 percent received
only probation or a fine.  For the 12 defendants, 40 percent
who received a sentence of imprisonment in whole or in part,
the average and median length of imprisonment imposed was one
month.

Having considered all of the factors under Section
3553(a) this Court finds that the sentence I am about to
impose are sufficient -- sentences I'm about to impose are
sufficient but not greater than necessary to reflect the
seriousness of the instant offense, promote deterrence and
respect for the law, protect the public from future crimes

1    that may be committed by the defendants, and to provide just

2    punishment.  Based on my consideration of the sentencing

3    guidelines and all of the 3553(a) factors, I will now state

4    the sentences to be imposed.

5          Mr. Mylnarek, please rise for your sentence.

6          Pursuant to the Sentencing Reform Act of 1984 and in

7    consideration of the provisions of 18 U.S.C. 3553, as well as

8    the advisory sentencing guidelines, it is the judgment of the

9    Court that you Ronald Michael Balhorn are hereby committed --

10          MR. GAY:  Mlynarek.

11          THE COURT:  Mlynarek, apologizes.  It is here the

12    judgment of the Court that you, Mr. Mylnarek, are hereby

13    committed to the custody of the Bureau of Prisons for

14    concurrent terms of 100 days of incarceration on Counts 2, 3,

15    6 and 7.  You are further sentenced to serve concurrent terms

16    of 12 months of supervised release on counts 2 and 3, which

17    shall include a condition of 200 hours of community service to

18    occur during the term of supervised release.

19          I further sentence you to a fine of $1,000.  In

20    addition you're ordered to pay special assessments totaling

21    $60 in accordance with 18 U.S.C. 3013.  You are also ordered

22    to make restitution in the amount of $500 to the Architect of

23    the Capitol.  The Court has determined you do not have the

24    ability to pay interest, and therefore waives any interest or

25    penalties that may accrue on the balance.  You may be seated.

1          While on supervision you shall abide by the

2     following mandatory conditions as well as all discretionary

3     conditions recommended by the probation office on pages 19 to

4     21 of the presentence report, which are imposed to establish

5     the basic expectations for your conduct while on supervision.

6     The mandatory conditions include:  You must not commit another

7     federal state or local crime.  You must not unlawfully possess

8     a controlled substance.  You must refrain from any unlawful

9     use of a controlled substance.  You must submit to one drug

10    test within 15 days of placement on supervision, and at least

11    two periodic drug tests thereafter as determined by the Court.

12    You must make restitution in accordance with 18 U.S.C. 3663

13    and 3663(a), and any other statute authorizing a sentence of

14    restitution.  I will not require you to get permission to

15    travel, but you do need to notify your supervision officer in

16    advance of any travel that you intend to take.

17          You shall also comply with the following special

18    conditions:  You must provide the probation officer access to

19    any requested financial information and authorize the release

20    of any financial information.  The probation office may share

21    financial information with the United States Attorney's

22    Office.  You must not incur new credit charges or open

23    additional lines of credit without the approval of the

24    probation officer.  You shall remove firearms, destructive

25    devices, or other dangerous weapons from areas over which you

1    have access or control until the term of supervision expires.

2            As I stated earlier, you must complete 200 hours of

3    community service at an organization that must be approved by

4    me over the 12 months of supervised release.  I want to

5    emphasize that, do not start doing community service and ask

6    for permission later.  I need to approve the community service

7    before it begins.

8            Restitution payments shall be made to the Clerk of

9    the Court of the United States District Court, District of

10   Columbia, for dispersement to the following victim, Architect

11   of the Capitol, Office of the Chief Financial Officer.  Ford

12   House Office Building, Room H2205B, Washington, D.C. 21515.

13           The financial obligations are immediately payable to

14   the Clerk of the Court for the U.S. District Court.  Within 30

15   days of any change of address you shall notify the Clerk of

16   the court of the change until such time as the financial

17   obligation is paid in full.

18           The probation office shall release the presentence

19   investigation report to all appropriate agencies, which

20   includes the U.S. probation officer in the Eastern District of

21   Michigan in order to execute the sentence of the Court.  Is he

22   in the Eastern District of Michigan?

23           MR. GAY:  Yes.

24           THE COURT:  Okay.  I will transfer supervision to

25   U.S. District Court for the Eastern District of Michigan, but

1   will retain jurisdiction.

2           Mr. Balhorn, please rise for your sentence.

3           Pursuant to the Sentencing Reform Act of 1984 and in

4   consideration of the provisions of 18 U.S.C. 3553, as well as

5   the advisory sentencing guidelines, it is the judgment of the

6   Court that you, Ronald Michael Balhorn, are hereby committed

7   to the custody of the Bureau of Prisons for concurrent terms

8   of 100 days of incarceration on Counts 4, 5, and 7.

9           You are further sentenced to serve concurrent terms

10  of 12 months of supervised release on Counts 4 and 5, which

11  shall include a condition of 200 hours of community service to

12  occur during the term of supervised release.

13          I further sentence you to a fine of $2,000.  In

14  addition, you're ordered to pay special assessments totaling

15  $60 in accordance with 18 U.S.C. 3013.  You're also ordered to

16  make restitution in the amount of $500 to the Architect of the

17  Capitol.  The Court will not require you to pay interest or

18  penalties that may accrue on the balance.  You may be seated.

19          While on supervision you shall abide by the

20  following mandatory conditions, as well as all discretionary

21  conditions recommended by the probation office on page 16 to

22  18 of the presentence report, which are imposed to establish

23  the basic expectations for your conduct while on supervision.

24          The mandatory conditions include:  You must not

25  commit another federal, state, or local crime.  You must not

1    unlawfully possess a controlled substance.  You must refrain

2    from any unlawful use of a controlled substance.  You must

3    submit to one drug test within 15 days of placement on

4    supervision and at least two periodic drug tests thereafter as

5    determined by the Court.  You must make restitution in

6    accordance with 18 U.S.C. 3663 and 3663(a), or any other

7    statute authorizing a sentence of restitution.  I will not

8    require you to get permission to travel, but you do need

9    notify your supervision officer in advance of any travel that

10   you intend to take.

11           You shall also comply with the following special

12   conditions:  Firearm restriction.  You shall remove firearms,

13   destructive devices, or other dangerous weapons from areas

14   over which you have access or control until the term of

15   supervision expires.  You must submit to substance abuse

16   testing to determine if you have used a prohibited substance.

17   You must not attempt to obstruct or tamper with the testing

18   methods.

19           As I said earlier, you must complete 200 hours of

20   community service at an organization that must be approved by

21   me, personally, over the 12 months of supervised release.

22           Restitution payments shall be made to the Clerk of

23   the Court for the U.S. District Court for the District of

24   Columbia for dispersement to the following victim:  Architect

25   of the Capitol, Office of the Chief Financial Officer.  The

1    financial obligations are immediately payable to the Clerk of

2    the Court for the U.S. District Court, 333 Constitution

3    Avenue, D.C. 20001.  Within 30 days of any change of address

4    you shall notify the Clerk of the Court of the change until

5    such time as the financial obligation is paid in full.

6             The probation office shall release the presentence

7    investigation report to all appropriate agencies, which

8    includes the United States Probation Office in the Eastern

9    District of Michigan, in order to execute the sentence of the

10   Court.  I will transfer supervision to U.S. District Court for

11   the Eastern District of Michigan, but will retain

12   jurisdiction.

13            Again, for the avoidance of any doubt, I would reach

14   the same sentence imposed today based solely on the guidelines

15   and my analysis of the 3553(a) factors, regardless of whether

16   Guideline 2B2.3 or 2A2.4 applied, and whether 2X1.1 applies,

17   and whether 4C1.1 applied to Mr. Balhorn.

18            What voluntary surrender date would you all like?

19            MR. GAY:  So, I don't -- my understanding of how

20   voluntary surrender works is that the Marshals give him a

21   date.  So that once he leaves here, there's paperwork that's

22   done through the BOP and that he then is given a date.  They

23   call him to show up.  If that's different in this

24   jurisdiction, please let me know.

25            THE COURT:  Well, I can give him whatever voluntary

 1   surrender date I want.  So if you want a particular time and

 2   not leave it to the whims of the U.S. Marshal, let me know.

 3          MR. GAY:  Let me speak with him briefly, please.

 4   We'd ask for April 30th.  And additionally on that, would

 5   there be a judicial recommendation of Milan, which is a prison

 6   in the Eastern District of Michigan.

 7          THE COURT:  Yeah, I'll make the recommendation.  Can

 8   you say the prison name for the record and spell it.

 9          MR. GAY:  Milan, M-i-l-a-n, I recognize it's spelled

10   like Milan, but that's --

11          MR. ROLLINS:  We're making the same recommendation,

12   April 30th.  I assume Bureau of Prisons would have a different

13   date.

14          THE COURT:  All right.  So I will give you April

15   30th as a self-surrender date.  I will make the recommendation

16   to the Prison Bureau for the Milan prison.  As you all know, I

17   can't guarantee that.  I just can make the recommendation.

18          Any objection on any of that from the government?

19          MR. KRISHNAMURTHY:  No, Your Honor.

20          THE COURT:  All right.  Pursuant to 18 U.S.C.

21   3742(a) each defendant has a statutory right to appeal the

22   sentence to the D.C. Circuit under certain circumstances,

23   including in you think the sentence was imposed in violation

24   of law or as a result of an incorrect application of the

25   sentencing guidelines, or is more severe than the maximum

1    established in the guideline range.  You may also appeal your

2    sentence if you believe you received ineffective assistance of

3    counsel at sentencing.

4          Pursuant to 18 U.S.C. 2255, you also have a right to

5    challenge the conviction entered or sentence imposed to the

6    extent permitted by that statute.  Any notice of appeal must

7    be filed by 14 days of the entry of judgment, or within 14

8    days of the filing of a notice of appeal by the government.

9    If you're unable to afford the cost of an appeal you may

10   request permission from the Court to file an appeal without

11   cost to you.  On appeal you may also apply for court-appointed

12   counsel.

13         That's it for me.  Are there any objections to the

14   sentence imposed not already on the record or anything else

15   that we need to discuss today?

16         MR. KRISHNAMURTHY:  No, Your Honor.

17         MR. GAY:  Not from us, Your Honor.

18         MR. WILSON:  Good morning, Your Honor.  Andre Wilson

19   from probation.  I have one question for Mr. -- the name with

20   the M, I can't pronounce it.

21         THE COURT:  Mr. Mylnarek.

22         MR. WILSON:  Yes so I have the special assessment as

23   $70.

24         THE COURT:  What did I say?

25         MR. WILSON:  $60.  I have four counts, $25 on Counts

2 and 3 and $10 on Count 6 and 7.

THE COURT:  Okay.  I apologize.  The special assessment for Mr. Mylnarek should be $70 not $60.  Anything else?

MR. WILSON:  That's it.

THE COURT:  Anything else from anyone?

All right.  Thank you everyone.

(The proceedings were concluded at 11:00 a.m.)


I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_____/s/_____
Christine T. Asif
Official Court Reporter

< Dates >.
April  60:3,
   60:11,
   60:13.
February 8th,
   2024.
   4:9.
January  34:9,
   46:9,
   49:15.
January 6
   24:24, 25:12,
   29:24, 32:7,
   46:2, 46:10,
   48:16.
January 6th
   18:4, 25:1,
   32:8.
January 6th,
   47:22,
   48:23.
January 6th,
   2021.
   45:7.
$1 54:18.
$10 28:9, 51:1,
   61:25.
$100 28:5,
   50:20.
$2 29:7,
   57:12.
$25 28:8,
   50:21,
   61:24.
$5 28:6, 29:13,
   50:23.
$500 51:24,
   52:17, 53:1,
   54:21,
   57:15.
$60 29:14,
   54:20, 57:14,
   61:24,
   62:2.
$70 29:8,
   61:22,
   62:2.
$9 28:8.
.
.

< 0 >.
00 62:7.
000 28:5, 28:6,
   29:7, 29:13,
   50:20, 50:23,
   54:18,
   57:12.
.
.
< 1 >.
1 7:25, 23:19,
   24:10, 24:17,
   51:12.
10 9:1, 10:22,
   15:18, 44:6,
   44:7.
100 54:13,
   57:7.
11 44:6,
   62:7.
12 27:10, 29:6,
   29:10, 29:12,
   29:13, 52:25,
   53:15, 54:15,
   56:3, 57:9,
   58:20.
14 61:6.
15 50:11, 55:9,
   58:2.
16 20:7,
   57:20.
1660 1:42.
17 5:11, 6:4,
   6:6.
1752 7:20.
1752(4 19:23.
1752(a)(1 3:21,
   8:1, 21:4,
   27:8, 28:4,
   28:9,
   50:19.
1752(a)(2 3:23,
   8:6, 8:22,
   8:24, 9:7,
   10:5, 12:7,
   18:12, 18:18,
   27:10.
18 3:21, 3:23,
   5:14, 6:4,
   6:11, 6:13,

7:20, 21:4,
   27:1, 27:7,
   27:9, 28:4,
   28:8, 28:11,
   29:1, 44:11,
   50:19, 53:14,
   54:6, 54:20,
   55:11, 57:3,
   57:14, 57:21,
   58:5, 60:19,
   61:3.
18: 50:22.
19 55:2.
1984 54:5,
   57:2.
1B1.2 7:25.
.
.
< 2 >.
2 5:13, 6:9,
   8:24, 15:13,
   21:4, 23:9,
   28:4, 28:9,
   29:1, 29:3,
   40:16, 50:19,
   51:7, 54:13,
   54:15,
   61:25.
200 47:5,
   51:24, 54:16,
   56:1, 57:10,
   58:18.
20001 2:46,
   59:2.
20004 2:11.
202 2:47.
2023 1:11.
20530 1:32.
21 55:3.
21-CR-127
   20:6.
21-CR-350 11:1,
   11:18,
   19:3.
21-CR-730
   52:15.
21515 56:11.
22 5:13, 6:9,
   20:7,
   40:16.

2255 61:3.
23-0114-ACR
   1:6.
23-114 3:3.
231 9:17, 9:23,
   10:9, 10:10,
   10:13, 11:6,
   16:24, 17:4,
   21:10,
   21:14.
24 44:7,
   52:17.
26 18:22,
   33:25,
   34:1.
26-year-old
   36:6.
28 33:25,
   45:16,
   51:21.
2A2.4 7:20,
   8:13, 8:17,
   8:25, 9:19,
   10:22, 11:2,
   11:8, 19:4,
   19:9, 26:6,
   59:15.
2B2 23:15.
2B2.3 7:21,
   8:4, 8:15,
   8:22, 10:19,
   11:1, 11:8,
   12:1, 19:4,
   19:10, 21:3,
   23:13, 23:23,
   53:11,
   59:15.
2nd 1:42.
2X1.1 21:7,
   23:4,
   59:15.
.
.
< 3 >.
3 19:15, 23:9,
   29:1, 29:3,
   54:13, 54:15,
   61:25.
3(b)(1)(a)(7
   23:15.

30 53:10,
   53:14, 56:13,
   59:2.
3013 54:20,
   57:14.
30th 60:3,
   60:11,
   60:14.
317 25:6.
333 2:45,
   59:1.
34 25:4.
35 44:6,
   44:7.
354-3247
   2:47.
3553 27:1,
   54:6, 57:3.
3553(a 28:24,
   44:11, 53:20,
   54:2,
   59:14.
36 25:4,
   51:23.
3663 55:11,
   58:5.
3663(a 28:11,
   55:12,
   58:5.
3742(a 60:20.
3E1 23:19.
.

< 4 >.
4 15:11, 15:13,
   21:5, 23:9,
   23:13, 23:21,
   23:24, 25:20,
   27:17, 28:7,
   29:10, 53:12,
   57:7, 57:9.
4-by-4 22:11.
40 3:24, 4:1,
   27:12, 27:14,
   28:5, 28:10,
   52:21,
   53:15.
405 2:10.
419 2:9.
44113 1:44.

4C1 24:17.
4C1.1 24:20,
   25:11,
   59:16.
.
.
< 5 >.
5 23:9, 29:10,
   57:7, 57:9.
500 28:7,
   28:8.
5014(e)(2)(d
   4:2.
5104(2)(G 3:25,
   27:14.
5104(e)(2)(d
   27:12, 28:5,
   28:10,
   50:22.
54 43:16,
   43:20.
54-year-old
   41:17.
5B1 51:12.
5c1.1(b 51:9.
5K1.1 53:13.
.
.
< 6 >.
6 15:10, 15:16,
   24:2, 25:19,
   27:18, 29:2,
   29:4, 29:10,
   54:14,
   61:25.
60 53:14.
63 18:22,
   25:4.
6th 22:15,
   34:9, 46:9,
   49:15.
.
.
< 7 >.
7 29:2, 29:4,
   29:11, 54:14,
   57:7,
   61:25.
750 1:43.
76 11:18,

19:3.
.
.
< 8 >.
8 29:3.
.
.
.
< 9 >.
90 51:23,
   52:16,
   52:20.
950 1:31.
98 20:7.
9:30 a.m.
   1:12.
_____/s/___
   _____
   62:13.
.
.
< A >.
a)(2 9:2,
   9:5.
A. 1:35,
   52:23.
a.m. 44:7,
   62:7.
abide 54:25,
   57:18.
abiding 34:8,
   34:9,
   41:18.
ability
   54:23.
able 47:25.
above 7:6,
   27:16,
   28:16.
above-entitled
   62:11.
absolutely
   14:12, 32:21,
   32:22, 33:12,
   34:7,
   37:15.
abuse 58:14.
accept 6:2,
   7:13.
acceptance
   15:3,

23:18.
accepted
   33:18.
access 11:20,
   55:17, 55:25,
   58:13.
accordance
   54:20, 55:11,
   57:14,
   58:5.
according
   48:22.
accordingly
   15:6.
account 15:3,
   15:4, 15:5,
   16:24, 17:7,
   21:17, 21:18,
   21:19, 28:22,
   30:14.
accrue 54:24,
   57:17.
acquit 10:11.
acquittal
   9:23.
acquitted 7:4,
   7:8, 7:10,
   9:16, 9:17,
   9:21, 10:2,
   12:3, 12:24,
   13:19, 16:25,
   17:17, 17:24,
   20:11, 21:2,
   21:21, 22:6,
   22:24, 23:17,
   30:8.
across 53:9.
Act 25:10,
   54:5, 57:2.
ACTION 1:5,
   3:2.
actions 10:7,
   50:1.
actual 48:20.
actually 32:5,
   40:15,
   48:13.
actus 9:23,
   10:13.
addition 44:19,

54:19,
57:13.
additional
24:21,
55:22.
additionally
60:3.
address 12:15,
42:22, 48:8,
56:14,
59:2.
adduce 38:5.
adequately
26:11.
adjusted 23:20,
24:2.
admit 36:17.
admits 33:19.
admitted 33:21,
34:12.
advance 55:15,
58:8.
advancing 52:6,
52:10.
advisory 7:18,
26:4, 44:9,
54:7, 57:4.
afford 61:8.
agencies 56:18,
59:6.
agree 6:5, 8:3,
23:2, 30:5,
35:13, 37:24,
38:7,
38:19.
agreeing
47:11.
agreement
28:12.
agrees 8:15,
8:16, 24:18,
26:12.
aid 33:1.
al 1:10.
alarms 40:22.
align 20:13.
allegation
6:25, 7:9.
alleged
48:18.

allow 10:11,
39:5.
allowed 43:2.
allows 17:17.
almost 20:18,
45:15.
alone 18:11,
46:15.
already 29:16,
40:20, 40:25,
61:13.
alt- 22:7.
altercation
22:4.
alternatives
34:16.
America 1:5,
3:3.
Americans 47:1,
47:3,
47:10.
among 44:24,
51:4.
amount 28:13,
54:21,
57:15.
ANA C. REYES
1:18.
analogous
18:24, 51:21,
52:14.
analysis
59:14.
anathema
49:13.
Andre 2:15,
61:17.
Andrew 1:39,
3:15.
answer 13:21.
anthem 46:14,
46:15, 46:16,
46:19, 46:24,
47:8.
anybody 40:4.
apologize
62:1.
apologizes
54:10.
apparently

48:23.
appeal 60:20,
60:25, 61:5,
61:7, 61:8,
61:9,
61:10.
APPEARANCES
1:23, 2:1.
applauded
47:21.
applicable
8:25, 12:24,
23:12, 23:22,
24:8, 25:18,
26:9, 27:4,
44:23.
Application
19:15,
60:23.
applied 8:22,
12:1, 24:16,
59:15,
59:16.
applies 7:19,
8:4, 11:7,
11:8, 14:6,
14:23, 15:8,
15:10, 21:3,
21:7, 23:14,
23:24, 24:20,
59:15.
apply 8:13,
8:15, 8:17,
9:19, 10:12,
10:22, 11:9,
12:23, 15:11,
15:18, 15:19,
17:23, 18:2,
18:3, 23:4,
23:7, 23:8,
24:19, 24:23,
25:18, 26:12,
61:10.
applying 15:17,
20:12,
26:6.
appreciate
40:2.
appropriate
7:23, 11:1,

14:19, 18:17,
19:3, 23:19,
38:12, 45:3,
56:18,
59:6.
approval
55:22.
approve 56:5.
approved 56:2,
58:19.
approximately
5:13, 6:9,
52:20.
Architect
54:21, 56:9,
57:15,
58:23.
area 52:19.
areas 55:24,
58:12.
arguably
25:15.
argue 18:23.
argued 12:1,
12:16.
argues 24:23.
arguing 13:4.
argument 25:12,
43:9.
arguments
25:11,
39:16.
around 11:19,
20:21, 32:11,
37:18, 43:2,
52:8, 53:2.
arrived 15:2.
articulate
10:20.
articulated
9:13.
aside 5:21,
26:22, 30:8,
50:12.
Asif 2:41,
62:9,
62:14.
asks 8:13,
8:14.
aspect 10:14.

assessment
  28:8, 28:9,
  29:8, 29:14,
  50:21, 50:25,
  61:21,
  62:2.
assessments
  54:19,
  57:13.
assistance
  53:13,
  61:1.
assume 19:16,
  22:1,
  60:11.
attack 24:25,
  35:12,
  42:3.
attempt
  58:16.
attempting
  45:12.
Attorney 1:30,
  4:15, 4:23,
  55:20.
authority
  8:3.
authorize
  55:18.
authorizing
  55:12,
  58:6.
available
  28:23, 44:23,
  50:16,
  50:18.
Avenue 1:31,
  2:45, 59:2.
average
  53:17.
avoid 6:12,
  44:24,
  51:15.
avoidance
  59:12.
aware 13:8,
  20:16.
.
.
< B >.

back 3:10,
  12:16, 14:2,
  29:24, 30:18,
  44:6, 48:24,
  53:4.
backwards
  46:10.
bad 49:2.
balance 54:24,
  57:17.
balances
  39:2.
Ballou 3:9.
barriers
  20:4.
base 8:25,
  10:18, 10:21,
  14:7, 15:16,
  19:16, 21:4,
  23:13,
  23:23.
Based 11:5,
  14:6, 15:19,
  15:20, 25:3,
  25:14, 25:25,
  26:1, 26:17,
  27:16, 29:15,
  54:1,
  59:13.
bases 46:22.
bashed 40:24.
bashing 41:5,
  41:10.
basic 55:4,
  57:22.
basically 9:20,
  32:14,
  41:8.
basis 26:17,
  48:8.
bear 17:20,
  17:21, 17:22,
  28:20.
Becase 34:16.
beef 48:2.
begin 4:7.
beginning
  46:24.
begins 56:6.
behalf 3:12,

3:15, 37:8.
beings 40:9,
  40:10.
belief 49:12.
beliefs 42:18,
  42:19,
  47:2.
believe 11:6,
  11:25, 31:12,
  31:17, 35:14,
  61:1.
believes
  49:20.
below 27:4.
bench 3:19.
bent 46:9.
best 19:22,
  22:14.
better 19:10,
  20:13.
beyond 12:8,
  22:23, 35:10,
  35:11.
big 35:5,
  35:7.
birthday
  4:10.
Black 20:6.
blaring
  40:23.
blatant 20:2,
  32:25.
blatantly
  34:9.
blind 47:16.
blue 41:24.
boat 39:18.
bodily 19:21.
BOP 59:21.
bosses 16:21.
Boulware
  18:9.
boys 41:24.
brawl 22:8.
breach 20:5.
break 44:6.
Brendan 3:9.
Brendan Ballou
  1:27.
briefly 12:15,

60:2.
broadly 9:23.
Brodnax 19:2,
  52:23, 53:1,
  53:5.
brought 17:20,
  17:21, 17:22,
  31:15.
Building 3:20,
  3:22, 3:24,
  4:1, 5:12,
  6:8, 8:2,
  8:10, 19:24,
  23:15, 23:25,
  27:7, 27:9,
  27:12, 27:13,
  52:20,
  56:11.
bumped 22:7,
  22:9, 22:11,
  33:10.
bunch 39:23.
Bureau 54:12,
  57:6, 60:11,
  60:15.
Burkhead 1:28,
  3:9.
business 8:8,
  8:12, 11:4,
  18:22, 19:6,
  19:13,
  30:17.
butcher
  12:19.
Byrd 1:39,
  3:15.
.
.
< C >.
C. 1:10, 2:11,
  2:46, 3:21,
  3:23, 3:24,
  4:1, 7:20,
  21:4, 27:1,
  27:7, 27:9,
  27:12, 27:14,
  28:4, 28:5,
  28:9, 28:10,
  28:11, 44:11,
  50:19, 54:6,

54:20, 55:11,
56:11, 57:3,
57:14, 58:5,
59:2, 60:19,
60:21,
61:3.
calculate
17:9.
calculated
5:20.
calculates
26:3.
calculating
44:8.
calculation
7:18, 23:7,
23:11, 24:4,
25:21, 26:15,
41:13.
calculations
23:8.
call 13:6,
20:8, 41:6,
59:22.
candidate
30:20.
Candidly
15:10.
Caps 46:12.
captured
18:12.
captures
13:18.
care 13:25,
33:9, 33:11,
43:6.
career 50:9.
carry 27:10,
27:14, 28:4,
28:6, 50:19,
50:22.
case 4:15,
4:23, 7:19,
8:21, 8:23,
8:24, 10:1,
10:25, 11:11,
11:15, 14:21,
17:23, 18:2,
18:4, 18:6,
20:13, 22:15,

23:12, 23:23,
28:11, 28:13,
29:25, 30:3,
30:8, 30:25,
32:7, 35:17,
39:3, 42:24,
45:3, 50:1,
51:21,
52:14.
cases 7:2,
7:22, 17:25,
20:2, 22:14,
34:6, 34:7,
35:4, 41:16,
46:2, 51:18,
51:19.
Category 24:9,
24:11, 24:14,
26:1, 26:2,
27:17, 35:8,
53:12.
caught 32:14.
certain
60:21.
certainly 38:8,
38:9.
certify 62:9.
challenge
61:4.
Chan 2:8.
chance 7:1.
change 56:14,
56:15, 59:2,
59:3.
changed 25:8,
26:7.
Chapter 51:7.
characteristic
15:12.
characteristics
19:19, 44:22,
49:22.
charge 7:11,
9:16, 9:18,
10:9, 10:11,
10:20, 11:2,
17:7, 18:12,
23:17.
charged 7:24,
23:16.

charges 16:17,
27:6, 27:11,
33:21, 45:22,
51:16, 52:1,
52:16, 52:25,
55:21.
Cherwick
12:19.
Chief 56:10,
58:24.
Christine 2:41,
62:9,
62:14.
Chwiesuik 8:23,
29:25, 30:16,
30:25, 31:12,
35:14,
51:22.
Chwiesuiks
52:2.
Circuit 22:15,
60:21.
circumstance
20:16.
circumstances
6:4, 7:14,
29:16, 44:21,
60:21.
citation
18:9.
cite 11:24.
cited 11:11.
citizen 34:8,
34:9.
civil 9:18,
48:14.
claim 25:6.
Class 23:8.
clear 9:7,
12:17, 12:23,
13:4, 17:1,
21:13, 22:3,
37:5, 47:23,
48:3.
Clerk 3:2,
11:19, 56:7,
56:13, 56:14,
58:21, 58:25,
59:3.
Cleveland

1:44.
client 5:6,
6:15, 33:7,
33:23.
clients 32:17,
42:7.
climbed 20:4.
cloak 48:10.
close 13:6,
20:8, 22:25,
35:17, 35:18,
50:2.
closed 52:19.
closer 13:11,
36:24,
39:6.
closing
33:21.
co-defendants
31:25.
co-owner
50:9.
codified
49:8.
collateral
30:15.
collects
53:9.
COLUMBIA 1:2.
Columbia 2:44,
56:9,
58:23.
coming 10:6,
17:1, 32:15,
38:8.
comments 26:18,
26:21,
29:18.
Commission
53:8.
commit 21:6,
55:5,
57:24.
committed
53:25, 54:8,
54:12,
57:5.
communicating
35:1.
community

38:14, 51:10,
51:24, 54:16,
56:2, 56:4,
56:5, 57:10,
58:19.
company 50:9.
complete 56:1,
58:18.
complex 46:5.
compliance
50:5,
50:13.
compliant
34:2.
comply 44:12,
55:16,
58:10.
computer-aided
2:50.
con 22:6.
concede
10:21.
concern 13:18,
42:21.
concerned 13:6,
13:7, 14:20,
18:5, 20:9.
concerning
45:17.
concluded 11:1,
19:3, 62:7.
concurrent
54:13, 54:14,
57:6, 57:8.
concurrently
28:1, 29:6,
29:12,
50:25.
condition
51:10, 54:16,
57:10.
conditions
30:21, 30:24,
34:3, 42:24,
50:5, 50:14,
55:1, 55:2,
55:5, 55:17,
57:19, 57:20,
57:23,
58:11.

conducting
18:21.
confinement
35:22, 39:3,
51:11.
Congress
44:11.
connection
4:20, 5:3,
25:9.
consequences
30:15.
consider 6:9,
6:14, 7:7,
7:9, 10:3,
12:24, 21:2,
26:10, 27:2,
43:15, 44:10,
44:21,
51:2.
consideration
21:10, 50:6,
50:15, 54:1,
54:6, 57:3.
considered
9:11, 26:11,
45:2, 51:12,
53:19.
considering
6:24.
considers
50:24.
consistent
30:24.
consistently
34:4.
Constitution
1:31, 46:7,
46:11, 48:4,
59:1.
constitutional
7:5.
construction
36:5.
cont'd 2:1.
contact 14:18,
19:21, 22:16,
53:5.
context 9:13,
12:2, 17:19,

46:19.
continue 35:23,
35:24, 36:7,
39:4.
continues
47:16,
49:20.
continuing
37:4.
Contitution
2:45.
contrast
52:4.
contributed
25:1.
control 55:25,
58:13.
controlled
55:7, 55:8,
57:25,
58:1.
convicted 7:25,
45:24, 52:1,
52:16,
52:24.
conviction
19:7, 30:22,
49:23,
61:4.
convince
47:15.
copies 22:17.
correct 23:5,
62:10.
correctly
21:1.
cost 61:8,
61:10.
counsel 16:6,
44:10, 61:2,
61:11.
Count 7:24,
8:24, 13:5,
28:10, 29:4,
29:11, 50:21,
51:1,
61:25.
countless
49:17.
country 47:5,

49:13.
Counts 23:9,
29:1, 29:2,
29:3, 29:10,
54:13, 54:15,
57:7, 57:9,
61:24.
course 17:15,
49:1, 49:3.
court-appointed
61:10.
courtroom
38:18.
cover 18:25.
coy 9:15.
create 10:15.
creating
41:11.
credible 30:10,
40:7, 40:8,
40:9,
40:13.
credit 55:21,
55:22.
crime 34:20,
55:6,
57:24.
crimes 44:18,
53:24.
Criminal 1:5,
3:2, 24:9,
24:10, 24:11,
24:13, 24:14,
24:15, 24:20,
24:21, 25:16,
25:17, 25:20,
26:1, 26:2,
27:17, 32:16,
43:17, 44:17,
50:8, 53:6,
53:12.
criminalization
9:3.
criminalizes
8:1, 19:23.
criteria 24:22,
25:11,
25:18.
cross 21:11.
crowd 13:13,

17:4, 20:22,
41:7, 42:17,
45:12,
52:10.
crowds 13:9,
32:12.
current 36:1,
36:3.
currently
15:24.
custody 54:12,
57:6.
cuts 25:14.
.
.
< D >.
damage 38:20.
danger 42:2,
42:4.
dangerous
55:24,
58:12.
Darin 3:14.
Darin Thompson
1:37.
data 25:2,
25:13,
53:9.
database
53:8.
date 32:7,
59:17, 59:20,
59:21, 59:25,
60:12,
60:14.
day 13:19,
14:1, 33:20,
41:17, 47:1,
47:2,
52:15.
days 51:23,
52:16, 54:13,
55:9, 56:14,
57:7, 58:2,
59:2, 61:6,
61:7.
DC 1:32.
dealing
49:19.
deciding

45:3.
decision 13:7,
20:7, 28:20,
35:15,
43:6.
decreasing
25:19.
defend 41:24.
DEFENDANT 1:12,
1:35, 2:5,
4:16, 4:21,
4:24, 5:4,
7:24, 18:18,
18:19, 19:7,
20:2, 20:4,
20:9, 25:16,
27:24, 28:12,
43:25, 44:1,
44:18, 44:22,
46:4, 46:10,
52:16, 52:18,
52:24,
60:20.
Defendants
3:18, 13:8,
18:23, 20:21,
20:24, 21:5,
26:4, 43:24,
44:25, 49:22,
51:16, 51:18,
51:20, 51:23,
52:8, 53:10,
53:13, 53:14,
53:15,
53:25.
Defender
1:40.
Defense 8:14,
12:14, 18:8,
22:18.
defer 16:5.
defiance
20:3.
democracy
36:12, 36:13,
47:17, 48:12,
49:16,
49:21.
democratic
35:12, 47:4,

47:6, 47:13,
47:25,
49:10.
demolition
36:4, 36:5,
50:9.
demonstrating
3:23,
27:13.
denied 50:13.
department 4:5,
4:18, 5:1.
departure
19:18, 26:11,
53:14.
departures
23:20, 24:1,
26:10, 26:13,
26:24.
described
28:16.
describes
17:2.
deserve
17:10.
deserves 31:15,
31:18.
designated
24:11,
24:14.
Despite 50:8.
destroy 45:20,
47:13.
destroyed
49:18.
destruction
41:11.
destructive
55:23,
58:12.
details 27:4.
detention
51:11,
51:24.
deter 44:17.
determination
18:10.
determinations
4:12.
determine 7:22,

58:15.
determined
26:9, 28:13,
51:3, 54:22,
55:10,
58:4.
determining
51:13.
deterrence
35:2, 35:3,
53:23.
developing
36:6.
devices 55:24,
58:12.
diagram 18:5.
dialogue
34:18.
died 49:14,
49:16.
difference
15:7, 15:9,
15:15, 15:22,
15:23, 31:16,
41:12.
differences
31:12,
33:15.
different
30:15, 42:15,
47:10, 59:22,
60:11.
differentiate
31:25, 33:3,
33:14.
differentiating
33:23.
differentiation
33:8.
differently
20:1,
32:17.
difficult
14:22, 21:20,
39:8, 46:1.
diploma 36:7.
directly 9:6,
19:8.
directs
38:17.

disagree
  18:23.
disagreed
  25:5.
discretionary
  55:1,
  57:19.
discuss 7:1,
  26:23, 27:4,
  28:19, 45:4,
  61:14.
discussed 5:7,
  6:16, 24:4,
  26:3, 27:3.
disorder 9:18,
  10:15.
disorderly
  3:21, 3:25,
  8:9, 9:8,
  9:11, 12:9,
  16:9, 16:13,
  16:14, 16:15,
  16:20, 18:20,
  21:16, 27:8,
  27:11.
disparage
  41:25.
disparities
  44:24,
  51:16.
dispel 32:12.
disperse 14:13,
  32:23, 34:11,
  42:16.
dispersement
  56:9,
  58:23.
dispute 6:21.
disputed 5:24,
  22:5.
disputing
  22:3.
disregard 20:3,
  20:10.
disregarded
  45:12,
  52:18.
disrupt 8:7,
  10:17.
disrupting

11:3, 12:9,
  19:6.
disruption 9:8,
  19:17,
  19:18.
disruptive
  3:22, 8:9,
  9:8, 12:10,
  18:20,
  27:8.
disrupts 8:11,
  9:8, 12:10.
distinction
  17:12,
  19:15.
District 1:1,
  1:2, 1:19,
  1:41, 2:43,
  2:44, 56:8,
  56:13, 56:19,
  56:21, 56:24,
  58:22, 59:1,
  59:8, 59:9,
  59:10,
  60:5.
docket 18:22,
  20:7, 25:3.
doing 13:17,
  22:9, 22:19,
  37:21, 43:13,
  46:17,
  56:4.
DOJ 7:2,
  16:19.
done 35:3,
  45:21,
  59:21.
Door 5:13, 6:9,
  45:14.
doors 41:4,
  41:6,
  41:11.
doubt 59:12.
down 17:1,
  41:11.
dozens 49:5.
draw 22:22,
  37:6.
dreamed
  39:20.

drive 34:7.
dropping
  50:8.
drug 55:8,
  55:10, 58:2,
  58:3.
drugs 43:1.
due 46:6.
Duly 31:11.
dumb 34:12,
  35:10.
During 17:3,
  53:10, 54:17,
  57:11.
.
.
< E >.
E. 1:28.
earlier 50:17,
  52:23, 56:1,
  58:18.
earth 37:21.
Eastern 56:19,
  56:21, 56:24,
  59:7, 59:10,
  60:5.
easy 21:24.
ECF 11:18,
  19:3.
education
  30:3.
Eight 29:6,
  30:22.
either 4:12,
  12:20, 13:23,
  37:9,
  43:24.
election
  48:18.
element
  10:10.
eligible
  27:24.
eludicated
  21:15.
email 11:20.
emphasize
  30:23, 31:8,
  56:4.
emphasized

31:4.
employed 34:23,
  50:3.
employer 31:13,
  36:5.
employment
  34:4, 39:4.
encapsulate
  13:17.
encounter
  52:2.
encountered
  45:8, 52:6.
end 13:19,
  13:25, 33:20,
  47:1, 47:2.
ended 37:10.
enforcement
  19:9.
engage 20:24,
  25:17, 45:9,
  45:19.
engaged 18:20,
  25:1,
  36:22.
engaging 8:9,
  52:10.
enhancement
  22:16,
  30:13.
enhancements
  15:17.
enough 4:17,
  4:25.
ensure 44:11.
enter 43:6,
  45:19,
  52:12.
entered 5:12,
  6:8, 14:15,
  28:12, 40:15,
  40:16, 42:14,
  45:13, 52:9,
  52:19, 53:1,
  61:4.
entering 3:20,
  8:1, 20:23,
  27:6,
  40:11.
entire 43:16,

43:19.
entirety 5:10,
    43:22.
entitled
    46:11.
entrance
    45:11.
entry 61:6.
err 20:11.
especially
    32:16,
    46:2.
Esquire 1:27,
    1:28, 1:29,
    1:37, 1:38,
    1:39, 2:7.
essentially
    9:3, 9:5,
    10:15,
    31:14.
establish 55:3,
    57:21.
established
    50:17,
    60:25.
et 1:10.
evaluated
    17:4.
event 46:13,
    46:20.
events 45:7.
Everyone 3:16,
    24:18, 41:8,
    48:5, 48:6,
    62:6.
everything
    10:5, 28:14,
    41:23, 47:21,
    49:13.
evidence 17:1,
    25:7, 52:5.
exactly
    43:12.
except 5:11,
    6:4, 6:7.
excluding
    53:12.
execute 56:20,
    59:8.
Exhibit 25:6.

expectations
    55:4,
    57:22.
experience
    17:2.
expires 55:25,
    58:14.
explain
    13:25.
explained
    19:23.
express 48:6.
extent 61:5.
extremely 39:8,
    45:17.
.
.
< F >.
face 19:2,
    32:18.
faced 19:1,
    45:21.
fact 5:25,
    7:16, 8:11,
    14:25, 16:13,
    18:21, 19:23,
    20:18, 25:14,
    33:17, 49:8,
    49:25.
factor 13:7.
factors 27:2,
    28:20, 28:24,
    44:10, 45:2,
    51:4, 53:19,
    54:2,
    59:14.
facts 7:15,
    11:15, 14:21,
    14:23, 20:12,
    26:17, 29:15,
    42:19.
factual 4:12,
    5:23, 6:2,
    6:21, 7:13,
    14:4,
    14:20.
Fair 20:18,
    33:24.
familiar 11:10,
    11:15,

12:17.
family 35:1,
    39:5, 39:8,
    50:2.
fan 46:21,
    46:22.
fandoms 47:3.
fans 46:20.
far 9:15,
    13:6.
farewell
    48:8.
fashion 36:18,
    39:1.
fashioning
    38:12.
father 50:10.
fathers 47:19,
    47:20, 47:23,
    48:3,
    48:11.
FCRR 2:41,
    62:9.
February 21
    1:11.
Federal 1:40,
    53:9, 55:6,
    57:24.
Federalist
    48:9.
feel 4:17,
    4:25, 7:2.
feeling
    16:20.
feels 22:23.
feet 53:4.
fell 36:25.
felony 10:9,
    13:5, 21:6.
few 16:8,
    26:18, 34:21,
    42:22, 45:4,
    52:14.
figure 14:5.
file 22:15,
    41:4, 61:9.
filed 4:8,
    4:19, 5:2,
    61:6.
filing 61:7.

final 4:8,
    28:20, 43:8,
    44:8,
    53:11.
finally 30:19,
    33:21.
Financial
    55:18, 55:19,
    55:20, 56:10,
    56:12, 56:15,
    58:24, 58:25,
    59:4.
find 8:21,
    21:3, 22:14,
    25:8, 30:9.
findings
    7:16.
finds 53:20.
fine 28:5,
    28:6, 28:7,
    29:7, 29:14,
    50:20, 50:23,
    53:15, 54:18,
    57:12.
Fines 28:4.
Firearm
    58:11.
firearms 55:23,
    58:11.
First 4:7,
    14:3, 14:5,
    18:25, 19:2,
    20:5, 30:7,
    34:23, 37:13,
    45:8, 45:19,
    49:6, 52:7,
    52:14.
fiscal 53:10.
fit 19:10,
    34:20.
five 21:23,
    27:25, 52:25,
    53:10.
follow 48:7.
following 23:8,
    41:7, 55:1,
    55:16, 56:9,
    57:19, 58:10,
    58:23.
follows

23:11.
Foot 30:25,
   31:2, 31:3,
   31:5,
   31:10.
Ford 56:10.
foregoing
   62:10.
forgiven
   33:17.
form 6:24,
   47:25,
   48:21.
forth 4:12,
   27:16,
   48:25.
forward 3:5,
   13:14, 18:3,
   20:17, 20:22,
   32:20, 45:13,
   52:9,
   52:13.
fought 48:12,
   48:13.
found 3:18,
   8:23, 19:10,
   24:9, 24:12,
   44:25,
   45:5.
founders
   48:22.
founding 47:19,
   47:20, 47:22,
   48:3,
   48:11.
four 23:16,
   61:24.
framework 9:6,
   12:6, 18:8,
   26:14,
   28:15.
frankly 37:7.
frat 35:10.
Friedman 10:25,
   11:13, 11:14,
   19:2,
   52:24.
Friedrich
   11:12.
front 17:1,

30:10, 33:9,
   34:10.
full 17:19,
   50:4, 56:16,
   59:4.
fully 4:14,
   4:22.
function
   19:13.
functions 8:8,
   8:12, 11:4,
   19:7,
   19:17.
fundamental
   9:10.
future 20:14,
   25:17, 31:9,
   44:18,
   53:24.
.
.
< G >.
G. 20:5, 21:3,
   23:12, 23:15,
   23:19, 23:23,
   51:9.
gainfully
   34:23,
   50:3.
game 46:12,
   46:15.
games 46:25.
gave 48:5,
   48:6.
GAY 1:38, 3:14,
   5:6, 24:6.
gear 13:9,
   32:19, 34:10,
   36:16, 36:21,
   36:22, 37:14,
   40:10, 41:22,
   42:16, 52:11,
   52:19.
gears 33:9.
general 35:2,
   35:3.
George 48:7.
gets 30:18.
getting
   32:14.

give 26:7,
   26:22, 31:20,
   31:21, 34:21,
   35:20, 36:4,
   46:10, 59:19,
   59:24,
   60:13.
Given 20:10,
   21:20, 21:21,
   23:2, 24:15,
   25:1, 31:11,
   59:21.
gives 35:21.
glass 45:14.
governmental
   19:17.
graduating
   34:5.
great 35:3.
greater 28:3,
   44:12,
   53:22.
grounds 3:20,
   3:22, 8:2,
   8:10, 10:6,
   19:25, 23:15,
   23:25, 26:11,
   27:7, 27:9,
   32:16, 45:15,
   47:21, 51:20,
   52:21.
group 38:1,
   38:3, 42:5,
   42:8, 46:8,
   53:3.
guarantee
   60:16.
guess 42:22.
guidelines
   7:19, 7:20,
   7:23, 13:24,
   15:12, 15:22,
   17:9, 17:14,
   19:22, 21:19,
   23:7, 23:11,
   26:4, 26:9,
   26:12, 26:14,
   26:21, 27:3,
   28:1, 28:7,
   28:15, 28:23,

44:9, 44:19,
   44:23, 51:2,
   51:6, 51:7,
   51:13, 54:2,
   54:7, 57:4,
   59:13,
   60:24.
guilty 3:19,
   3:25, 23:16,
   33:18, 33:21,
   34:2, 35:6,
   44:25,
   45:5.
guys 11:19,
   11:22, 11:24,
   22:8, 22:9,
   23:2.
.
.
< H >.
H2205B 56:11.
Hackerman
   17:2.
hairs 21:23.
Hamilton 48:19,
   48:24,
   49:2.
hand 12:8.
handled
   29:25.
happen 41:13.
happened 32:15,
   39:22, 39:23,
   39:24, 39:25,
   42:10, 47:14,
   48:25,
   49:14.
happening
   37:16, 39:25,
   41:7,
   47:21.
happens 9:12,
   15:15.
happy 48:23,
   48:24.
hard 34:4,
   46:3.
harder 41:16.
harrowingly
   17:2.

hashing
  21:11.
hate 34:6.
headed 39:16.
hear 16:3.
heard 8:18,
  17:13.
Hearing 1:17,
  7:12, 44:9,
  47:18.
help 38:21,
  38:23.
hereby 54:8,
  54:11, 57:5,
  62:9.
high 34:5,
  36:7, 50:8.
higher 14:7.
History 24:9,
  24:10, 24:11,
  24:13, 24:14,
  24:15, 24:20,
  24:21, 25:16,
  25:20, 26:1,
  26:2, 27:17,
  32:16, 44:22,
  46:6, 47:7,
  49:8, 49:22,
  53:6,
  53:12.
hit 22:10.
home 39:4,
  39:7, 46:15,
  51:11,
  51:24.
Honorable
  1:18.
hopefully
  25:15.
hoping 43:9.
hour 45:15,
  51:20.
hours 51:24,
  54:16, 56:1,
  57:10,
  58:18.
House 56:11.
housing 34:25,
  35:24.
huge 41:12.

human 38:5,
  40:8, 40:9,
  47:7.
hurt 14:11.
hurting
  41:11.
.
.
< I >.
I. 24:11,
  24:14,
  53:12.
idea 42:17,
  49:2.
identify 3:5.
ignore 36:21,
  41:23,
  42:1.
ignoring
  42:15.
imagine
  16:14.
immediately
  52:4, 56:12,
  58:25.
impacted
  49:18.
impaired
  49:24.
impede 8:7,
  10:17.
impeded 13:1,
  18:21.
impedes 8:11,
  9:8, 12:10.
impeding 7:21,
  8:14, 9:7,
  11:3, 11:4,
  12:9, 12:25,
  14:7, 14:17,
  18:17, 19:5,
  19:6, 19:8.
important
  11:18, 17:11,
  29:23.
impose 27:20,
  44:11, 51:13,
  53:21.
imposed 27:23,
  28:2, 44:15,

51:9, 53:17,
  54:3, 55:3,
  57:21, 59:13,
  60:22, 61:4,
  61:13.
imposing
  46:1.
imprison
  36:21.
imprisonment
  26:5, 27:11,
  27:15, 27:18,
  27:22, 50:20,
  50:23, 51:3,
  51:8, 53:16,
  53:17.
in. 41:9.
incarc-
  36:19.
incarcerate
  30:18.
incarcerated
  35:25,
  36:8.
incarceration
  15:24, 16:1,
  29:1, 29:2,
  29:3, 29:4,
  29:5, 29:6,
  29:10, 29:11,
  29:12, 29:13,
  29:23, 31:16,
  34:17, 34:20,
  34:24, 35:21,
  35:22, 38:20,
  52:17, 52:25,
  54:13,
  57:7.
inclined 31:19,
  31:21,
  35:20.
include 19:21,
  44:14, 54:16,
  55:5, 57:10,
  57:23.
included 9:23,
  20:2,
  20:20.
includes 10:6,
  10:7, 26:11,

56:19,
  59:7.
including 10:5,
  27:2, 44:23,
  60:22.
inconsistencies
  8:4.
incorrect
  60:23.
increase 23:14,
  23:24.
increased
  15:11.
increases
  19:21.
increasing
  49:3.
incredibly
  7:2.
incur 55:21.
independence
  48:13.
index 7:19,
  19:22.
indicated
  6:22.
indictment 9:6,
  9:9, 12:2,
  12:6, 12:7,
  12:8, 18:10,
  18:11.
individual
  24:25,
  46:4.
individuals
  42:6.
ineffective
  61:1.
inference
  19:11.
information
  53:8, 55:18,
  55:19,
  55:20.
inherence
  46:7.
initial 26:3.
injury 19:22.
innocence
  46:7.

insanity
  22:23.
inside 45:15,
  51:21,
  52:3.
instances
  21:16.
instant
  53:23.
instead 8:14.
insurrection
  33:1, 33:12,
  33:13, 34:11,
  35:8, 35:12,
  37:12, 37:15,
  37:19, 37:22,
  38:6, 39:17,
  40:3, 40:5,
  40:13, 42:14,
  47:9.
insurrectionist
  46:5.
insurrectionist
  s 41:10.
intelligent
  38:5, 40:8.
intend 55:15,
  58:9.
intending
  42:9.
Intent 8:7,
  10:15, 10:16,
  21:6, 32:8,
  32:9, 36:14,
  37:25.
intentional
  22:5.
intentionality
  22:17.
interaction
  36:25,
  37:1.
interest 54:23,
  57:16.
interference
  19:12.
interfering
  9:16, 19:8.
intermittent
  35:21, 39:3,

51:11.
interpret
  9:4.
investigation
  56:18,
  59:6.
involve 19:8.
involved 32:11,
  33:19, 38:10,
  38:11,
  46:3.
involves
  19:14.
involving
  19:18.
issue 6:12,
  9:10, 13:1,
  14:6, 43:1.
issues 5:25,
  42:22,
  42:23.
itself 45:16.
.
.
< J >.
Jack 1:28,
  3:9.
Jackson 20:6.
jail 15:18,
  34:14.
job 31:4, 31:6,
  34:24, 35:3,
  36:1, 36:3,
  36:12,
  46:1.
Judge 1:19,
  10:25, 11:12,
  11:13, 19:1,
  20:6, 20:19,
  22:22, 43:18,
  52:15,
  52:24.
judges 20:1.
judgment 54:7,
  54:11, 57:4,
  61:6.
judicial
  60:4.
judiciary 53:8,
  53:9.

jurisdiction
  56:25, 59:11,
  59:23.
justice
  30:12.
.
.
< K >.
Keep 12:4,
  12:11, 22:9,
  29:19, 40:11,
  47:18,
  48:14.
keeps 42:23.
kept 13:14,
  20:22, 32:20,
  37:2, 40:12,
  45:13.
kid 35:10.
kind 22:3,
  41:4,
  51:12.
kinds 44:22,
  50:16,
  50:18.
Knowingly 8:1,
  8:7.
knowledge
  14:16.
Kotelly
  52:15.
KRISHNAMURTHY
  1:29, 3:8,
  29:22, 31:3,
  31:23.
Kyle 1:35, 3:3,
  3:18.
KYLE ALAN
  MYLNAREK
  1:10.
.
.
< L >.
lack 34:2.
language 9:9,
  11:5, 12:7.
last 5:14,
  6:13, 18:7,
  21:25, 22:18,
  29:24, 43:20,

46:12,
  53:10.
later 45:9,
  56:5.
law 19:9,
  32:25, 33:1,
  34:8, 34:9,
  34:10, 41:18,
  44:16, 48:7,
  49:25, 53:24,
  60:23.
lawful 8:2.
lawn 40:20.
lays 7:17.
least 37:12,
  37:13, 39:12,
  55:9, 58:3.
leave 30:17,
  36:17, 52:4,
  52:8, 60:1.
leaves 59:20.
ledge 10:7,
  17:1.
ledge. 30:11.
left 15:1,
  51:19.
legal 14:4.
length 53:17.
less 19:22,
  22:12, 27:22,
  33:11, 43:6,
  45:22.
level 9:1,
  10:18, 10:22,
  14:8, 15:11,
  15:16, 19:16,
  21:5, 23:13,
  23:21, 23:22,
  23:24, 24:2,
  24:4, 24:16,
  25:19, 25:25,
  26:2, 27:16,
  28:3, 28:7,
  40:2, 40:4,
  53:11.
Lieutenant
  17:2.
life 34:5,
  36:8, 41:18,
  43:15, 43:16,

43:19, 43:20,
    46:5.
lightly
    49:25.
Lincoln 48:9.
line 37:13,
    53:3, 53:4.
lines 32:11,
    45:8,
    55:22.
lingo 31:8.
lists 7:19.
literally 7:4,
    22:11, 22:12,
    32:18, 41:6,
    41:17.
litigated
    12:22,
    29:24.
Littlejohn
    32:6.
lived 43:20.
livelihoods
    49:18.
lives 49:15,
    49:16,
    49:18.
loathe 17:23.
local 55:6,
    57:24.
long 33:6.
look 12:6,
    17:17, 18:9,
    18:10, 40:16,
    43:10, 43:19,
    43:21.
looked 53:7.
looking 9:6,
    15:18, 26:21,
    29:24, 38:6,
    39:1,
    43:15.
lose 31:8,
    34:24, 34:25,
    35:25, 36:9,
    36:12, 36:13,
    38:21,
    46:23.
lost 36:11.
lot 13:25,

16:21, 38:13,
    41:7,
    48:22.
lower 21:2.
.
.
.
< M >.
M-i-l-a-n
    60:8.
M. 2:5, 2:7.
ma'am 4:16.
machine 2:49.
maintain 35:24,
    39:4.
maintaining
    34:4.
man 34:3, 36:6,
    41:17,
    43:20.
mandatory 28:8,
    29:8, 29:14,
    50:21, 51:1,
    55:1, 55:5,
    57:19,
    57:23.
manic 46:14.
manifestations
    49:6.
marijuana 43:3,
    50:12.
Mark 2:7,
    3:11.
Marshal 60:1.
Marshals
    59:19.
Matt 3:14.
matter 4:9,
    13:23, 14:4,
    17:19, 37:7,
    62:11.
Matthew 1:38.
maximum 27:10,
    27:14, 28:5,
    28:6, 50:19,
    50:22,
    60:24.
mean 9:11,
    10:25, 12:8,
    13:2, 13:3,
    14:9, 15:18,

16:1, 16:2,
    17:9, 17:15,
    17:22, 18:2,
    22:7, 22:10,
    30:2, 36:22,
    40:24.
means 34:24,
    47:3, 47:4,
    47:5.
meant 18:25.
median 53:17.
meet 24:21.
meets 24:22,
    25:17.
memo 10:21,
    12:17, 12:18,
    17:16, 18:22,
    22:2, 22:14,
    25:3,
    30:23.
memorandum 4:5,
    6:22.
mens 9:24,
    10:14.
mentioned 51:5,
    52:23.
mentor/mentee
    31:14,
    43:9.
merit 6:12.
methods
    58:17.
Michael 54:8,
    57:5.
Michigan 39:7,
    56:20, 56:21,
    56:24, 59:8,
    59:10,
    60:5.
Milan 39:12,
    60:4, 60:8,
    60:9,
    60:15.
mildly 45:16.
military 31:7,
    49:10.
mine 31:4.
minimize
    45:6.
minimum 38:4.

minute 44:6,
    51:18.
minutes 29:20,
    35:16, 45:16,
    51:21, 52:21,
    52:22.
misconduct
    10:3, 16:23,
    17:19.
misdemeanor
    45:6.
misdemeanors
    23:8,
    23:16.
mistake 35:6,
    35:7, 35:8,
    35:11, 43:18,
    43:19.
Mlynarek 3:3,
    3:18, 5:11,
    6:7, 54:9,
    54:10.
momentarily
    26:8.
month 53:18.
months 26:5,
    27:11, 27:15,
    27:18, 29:1,
    29:3, 29:4,
    29:6, 29:10,
    29:13, 50:4,
    50:12, 50:23,
    51:3, 51:23,
    52:17, 52:25,
    54:15, 56:3,
    57:9,
    58:20.
morning 3:7,
    3:10, 3:11,
    3:13, 3:14,
    3:16,
    61:17.
moved 52:13.
moving 20:22,
    38:2,
    45:13.
MR. BALLOU
    11:21.
MR. ROLLINS
    3:11, 6:20,

16:5, 24:7,
25:24, 26:25,
39:15, 40:1,
40:14, 41:2,
42:11, 42:21,
43:8, 43:14,
60:10.
MR. THOMPSON
6:17.
MR. WILSON
61:24,
62:4.
MSNBC 39:24.
multiple 27:25,
50:24.
.
.
< N >.
name 12:19,
36:5, 60:7,
61:18.
national 46:14,
46:15, 46:16,
46:19, 46:24,
47:8, 49:9.
nature 44:21,
49:19.
necessarily
19:14.
necessary
44:12,
53:22.
need 18:9,
37:5, 44:14,
44:24, 45:1,
51:15, 55:14,
56:5, 58:7,
61:14.
needs 16:23,
17:20.
negatively
49:17.
Neither 26:10,
28:12.
new 55:21.
next 26:10.
night 46:12.
No. 1:5,
11:18.
non 52:15.

none 43:5.
nonetheless
10:11, 20:22,
47:11.
nonincarcerator
y 15:20.
nonsensical
7:3.
Nor 51:21.
Northeast
52:7.
Northern
1:41.
Northwest 10:8,
16:25, 21:14,
22:4, 45:9.
Note 19:15,
26:6, 50:2,
50:3, 50:11,
53:5.
noted 5:9,
5:10, 5:14,
20:23,
31:11.
notes 19:17.
nothing
49:24.
notice 61:5,
61:7.
notify 28:21,
55:14, 56:14,
58:8, 59:3.
notwithstanding
8:4, 13:11.
novelist
39:21.
numerous
13:8.
NW 1:31, 2:9,
2:45.
.
.
< O >.
object 12:22.
objection 4:11,
5:9, 5:10,
5:14, 6:11,
7:12, 26:25,
60:17.
objections

5:16, 5:19,
6:18, 24:3,
25:20, 26:14,
26:24, 28:14,
61:12.
objects
24:17.
obligation
14:5, 56:16,
59:4.
obligations
56:12,
58:25.
obstruct
58:16.
obstructed
13:1.
obstructing
7:21, 8:13,
11:2, 12:25,
14:7, 14:17,
18:17, 19:5,
19:8.
obstruction
13:15, 15:8,
19:12,
30:12.
obvious
13:12.
occasions
32:20.
occur 54:17,
57:11.
occurred 10:4,
10:5, 23:14,
23:25,
45:23.
occurring
10:4.
occurs 9:12,
10:18.
offenders
24:20.
offenses 45:6,
45:25.
Office 1:30,
1:40, 7:18,
8:15, 8:16,
24:16, 28:22,
28:25, 29:5,

29:9, 29:11,
29:15, 55:2,
55:19, 55:21,
56:10, 56:11,
56:17, 57:20,
58:24, 59:5,
59:7.
Officer 6:6,
6:25, 7:10,
10:1, 18:17,
24:24, 25:7,
30:16, 33:10,
42:4, 42:8,
52:3, 53:5,
55:14, 55:17,
55:23, 56:10,
56:19, 58:8,
58:24.
Official 2:42,
8:8, 8:12,
11:4, 18:21,
19:6, 19:13,
62:15.
officials
18:21.
Ohio 1:41.
Okay 6:23,
9:19, 11:14,
12:4, 12:11,
15:25, 16:2,
16:7, 18:13,
21:12, 23:6,
32:1, 32:4,
38:25, 39:13,
56:23,
62:1.
old 31:4, 31:5,
33:25.
once 14:22,
30:22, 32:19,
48:4,
59:20.
One 11:11,
12:23, 13:16,
16:9, 16:12,
16:15, 17:25,
21:22, 27:10,
27:20, 27:22,
33:10, 33:21,
35:17, 36:23,

40:14, 41:15,
42:22, 43:17,
43:18, 46:25,
47:8, 47:12,
47:13, 49:6,
49:7, 49:12,
51:19, 53:17,
55:8, 58:2,
61:18.
one-year
  50:20.
ones 41:5.
oops 35:9.
open 55:21.
operating
  49:24.
opposed 12:3,
  14:16.
opposite
  47:12.
opposition
  43:1.
optional
  27:23.
order 28:10,
  56:20,
  59:8.
ordered 54:19,
  54:20, 57:13,
  57:14.
orderly 8:8,
  8:11,
  19:12.
orders 7:7.
organization
  56:2,
  58:19.
others 37:1,
  45:24, 47:15,
  52:10.
otherwise 9:4,
  34:8, 47:15,
  49:20,
  51:8.
ought 33:17,
  34:20.
outset 33:3.
outside 52:3.
outstanding
  5:19.

overrun 13:14,
  38:1, 42:5.
overrunning
  37:20,
  37:22.
overthrow
  46:9.
overturn
  48:11.
overturned
  23:3.
own 10:21,
  30:17.
.
.
< P >.
p.m. 5:13,
  6:9.
page 57:20.
pages 55:2.
paid 56:16,
  59:4.
painful 30:1.
painted
  39:22.
Papers 4:19,
  5:2, 48:9.
paperwork 9:6,
  18:10, 18:11,
  59:20.
parading 3:23,
  27:13.
paragraph 5:11,
  5:14, 6:4,
  6:6, 6:11,
  6:13.
part 20:5,
  21:22, 33:12,
  33:13, 35:8,
  35:11, 35:12,
  37:8, 37:14,
  37:19, 37:22,
  38:1, 38:3,
  38:6, 40:12,
  42:8, 42:13,
  45:18, 46:1,
  47:11, 53:3,
  53:16.
participate
  37:11.

particular
  18:6, 28:21,
  59:25.
Particularly
  20:1, 29:23,
  30:6, 31:13,
  31:16.
parties 3:5,
  28:21,
  29:17.
partner
  50:10.
parts 21:22.
pass 11:19,
  32:10.
passed 37:12,
  37:13, 40:20,
  40:21,
  40:25.
past 6:5,
  34:17, 38:2,
  41:22,
  53:3.
patently
  13:12.
pattern
  20:18.
Pavan 1:29,
  3:7.
pay 54:19,
  54:23, 57:13,
  57:16.
payable 56:12,
  58:25.
payments 56:7,
  58:21.
peaceful
  47:6.
penal 27:5.
penalties
  54:24,
  57:17.
pending
  42:24.
People 7:5,
  14:13, 22:24,
  32:14, 32:16,
  32:23, 36:16,
  36:21, 36:22,
  37:23, 38:1,

38:3, 38:23,
  39:23, 40:11,
  41:10, 41:11,
  41:21, 41:24,
  42:5, 42:6,
  42:7, 42:10,
  42:18, 45:10,
  45:19, 46:3,
  47:18, 48:22,
  49:5, 49:11,
  49:15,
  49:16.
per 28:9,
  50:21,
  51:1.
percent 53:14,
  53:15.
period 15:24,
  33:2, 34:24,
  35:20, 35:22,
  36:9, 38:20,
  51:10.
periodic 55:10,
  58:3.
permission
  55:13, 56:5,
  58:7, 61:9.
permitted
  61:5.
person 19:14,
  19:20, 19:24,
  31:14, 32:7,
  40:2,
  49:12.
personal 47:2,
  47:3.
personally
  24:25,
  58:20.
perspective
  33:7.
photos 17:3.
phrase 5:11,
  6:7.
physical 14:18,
  19:21, 19:24,
  22:4, 22:7,
  22:16, 37:1,
  53:4.
physically

20:25.
picked 37:3.
picketing 3:24,
   27:13.
picture 39:22,
   43:20.
pithy 16:9,
   26:18, 26:21,
   29:18.
place 39:18,
   39:20, 40:3,
   40:5, 40:22,
   48:4, 48:5,
   48:14.
placement 55:9,
   58:2.
places 36:23,
   39:10.
Plaintiff
   1:7.
plan 37:8,
   37:9,
   37:11.
Plaza 45:8,
   52:7.
plea 3:19,
   28:12.
plead 33:18.
pleaded 34:2.
please 3:5,
   20:16, 20:19,
   54:4, 57:1,
   59:23,
   60:2.
pled 3:25,
   10:4, 10:16,
   23:16,
   35:6.
plenty 26:22.
plus 9:3.
point 12:5,
   17:19, 19:21,
   24:20, 28:21,
   31:24, 35:1,
   37:4, 37:6,
   38:22,
   38:23.
points 12:16,
   13:8, 14:3,
   16:9, 21:1,

24:16, 24:21,
   32:18,
   49:8.
policy 11:16,
   44:20.
politic
   47:12.
position 14:22,
   18:16, 23:3,
   36:19,
   42:25.
possess 55:6,
   57:25.
possible 30:1,
   42:9.
possibly
   36:20.
post 30:22.
power 47:6,
   49:6.
practical 15:7,
   15:9.
practically
   13:22,
   17:10.
predictive
   25:14.
prescribe
   27:3.
Present 2:15,
   3:12, 4:10.
presented
   22:17.
presentence
   4:4, 4:7,
   4:8, 4:12,
   4:19, 5:2,
   5:7, 5:16,
   6:3, 6:7,
   6:13, 6:16,
   6:19, 6:22,
   7:13, 7:15,
   7:17, 24:9,
   24:12, 26:3,
   29:17, 55:3,
   56:17, 57:21,
   59:5.
presumption
   46:7.
presuppose

19:20.
pretty 9:7,
   12:17, 12:23,
   13:4.
prevent
   45:10.
previously
   51:5.
primary
   53:11.
prior 12:18,
   23:19, 24:1,
   38:14,
   49:23.
Prison 30:2,
   30:18, 31:18,
   32:14, 33:2,
   39:6, 60:4,
   60:7,
   60:15.
Prisons 54:12,
   57:6,
   60:11.
probably
   41:15.
probationary
   50:24.
probative
   25:3.
problem 9:14,
   13:3, 32:3.
Proceedings
   2:49, 62:7,
   62:11.
process 46:6,
   47:4, 47:6.
produced
   2:49.
professional
   46:13.
prohibited
   58:15.
prohibits
   8:7.
promote 44:15,
   44:19,
   53:23.
pronounce
   61:19.
proof 21:1.

property
   45:20.
proposed
   19:11.
prosecuting
   35:4.
protect 44:18,
   48:14, 49:15,
   53:24.
protesters
   52:6.
provide 44:16,
   45:1, 53:25,
   55:17.
provisions
   54:6, 57:3.
proximity
   8:10.
PS 5:11.
PSR 5:15,
   26:10.
Psrs 8:5.
Public 1:40,
   10:15, 44:18,
   53:24.
pull 11:17.
punch 14:10,
   22:10.
punched
   45:14.
punished 42:12,
   42:13, 42:14,
   42:17.
punishment
   34:19, 38:22,
   38:23, 44:16,
   54:1.
pure 22:23.
purpose 7:16,
   9:4, 20:15.
purposes 7:2,
   7:6, 44:13,
   44:14, 44:20,
   51:4.
Pursuant 23:19,
   24:17, 28:11,
   54:5, 57:2,
   60:19,
   61:3.
push 6:5.

pushed 6:21,
   14:17, 24:24,
   52:8, 53:3.
pushing 17:3.
Put 5:21, 30:8,
   30:16, 32:14,
   33:2, 34:14,
   42:1, 42:4,
   47:17,
   48:4.
putting 26:22,
   30:2, 39:17,
   45:16,
   48:19.
.
.
< Q >.
qualitative
   31:15.
qualitatively
   31:25.
quell 13:9,
   45:12,
   49:4.
quelling
   49:7.
question 9:25,
   14:2, 19:1,
   61:18.
quibble
   36:14.
quiet 13:13.
quite 47:22,
   48:3.
quotation
   20:20.
quote 6:7, 8:1,
   19:16, 20:17,
   20:19,
   30:9.
.
.
< R >.
rabid 46:20,
   46:21.
rally 32:9,
   37:10.
range 7:18,
   13:24, 15:14,
   15:20, 26:4,

26:7, 26:9,
   27:3, 27:18,
   27:21, 28:7,
   28:23, 44:9,
   50:17, 51:2,
   60:25.
Rather 52:8.
rea 9:24,
   10:14.
reach 59:12.
reaching
   45:11.
read 5:7, 6:16,
   43:1.
ready 26:18.
reality 42:20,
   47:16.
realize 40:4.
really 13:16,
   46:8, 49:2.
reason 9:2,
   33:22, 46:18,
   46:24.
reasoned
   19:4.
reasons 30:7,
   34:22,
   46:25.
rebel 49:4.
rebelling
   49:3.
rebellion
   48:15, 48:16,
   48:17, 48:21,
   48:24, 49:5,
   49:7.
recall 9:15,
   22:12, 36:23,
   40:22.
received 4:3,
   53:13, 53:14,
   53:16,
   61:1.
recent 8:23,
   51:22.
recess 44:7.
recidivism
   25:2,
   25:13.
recitation 6:3,

7:13.
recognize
   14:20, 14:24,
   36:9, 38:11,
   45:18, 45:22,
   50:7, 60:8.
recognized
   41:14.
recognizing
   39:1.
recollection
   37:3.
recommendation
   4:4, 15:23,
   29:14, 39:10,
   60:4, 60:6,
   60:10, 60:14,
   60:16.
recommendations
   4:9, 31:24.
recommended
   28:22, 55:2,
   57:20.
recommends
   28:25, 29:3,
   29:5, 29:9,
   29:11.
record 3:6,
   16:18, 49:25,
   50:8, 60:7,
   61:13,
   62:11.
recorded
   2:49.
records
   44:25.
Red 46:21.
reduction
   23:18, 24:17,
   24:18, 24:19,
   25:19.
reductions
   24:23.
reference 7:23,
   21:11,
   38:13.
refers 12:9,
   12:10.
reflect 44:15,
   53:22.

reflects
   50:2.
Reform 54:5,
   57:2.
refrain 55:7,
   57:25.
regard 5:19.
regarding 6:3,
   6:21, 7:14.
regardless
   59:14.
rehabilitation
   44:19.
reintroduce
   10:2, 10:8.
rejected
   19:11.
relate 25:11.
related 8:24,
   12:1,
   16:25.
relates 9:7,
   11:2, 19:4,
   19:9,
   21:14.
relating
   42:23.
relation
   12:2.
relationship
   31:14,
   43:9.
relationships
   50:10.
release 27:19,
   27:20, 27:21,
   27:23, 29:7,
   29:13, 30:21,
   30:24, 42:24,
   50:5, 50:14,
   52:17, 53:1,
   54:15, 54:17,
   55:18, 56:3,
   56:17, 57:9,
   57:11, 58:20,
   59:5.
relevant
   44:10.
rely 20:17.
remain 15:12.

remained 14:15,
  52:21.
remaining 3:20,
  8:2, 27:6.
remember
  40:23.
remembers
  40:14.
reminds
  46:25.
remorse 34:2.
remove 55:23,
  58:11.
repeatedly
  25:5, 30:21,
  32:13,
  40:10.
rephrase
  16:22.
report 4:4,
  4:7, 4:12,
  4:19, 5:2,
  5:7, 5:11,
  5:17, 6:3,
  6:7, 6:13,
  6:16, 6:19,
  7:13, 7:15,
  7:17, 24:9,
  24:12, 26:3,
  29:17, 55:3,
  56:18, 57:21,
  59:6.
Reported
  2:39.
Reporter 2:42,
  62:15.
reports 4:8.
representation
  15:15,
  47:24.
request 61:9.
requested
  55:18.
require 22:16,
  51:8, 55:13,
  57:16,
  58:7.
required
  51:9.
requirement

10:16.
requires 10:13,
  10:16, 18:19,
  27:1.
requiring
  51:10.
resides 39:7.
resolved
  8:23.
resources
  49:9.
respect 18:15,
  27:19, 27:24,
  31:16, 41:21,
  43:14, 44:16,
  53:24.
respects
  41:18.
responsibility
  14:25, 15:4,
  23:18, 33:18,
  50:1.
Restitution
  28:11, 29:7,
  45:1, 51:25,
  52:18, 53:1,
  54:21, 55:11,
  55:13, 56:7,
  57:15, 58:4,
  58:6,
  58:21.
restricted
  3:20, 3:22,
  8:2, 8:10,
  10:6, 19:24,
  23:14, 23:25,
  27:7, 27:9,
  52:21.
restriction
  58:11.
result 49:14,
  60:23.
retain 56:25,
  59:10.
reus 9:24,
  10:14.
revealed
  29:16.
reviewed 4:3.
revolt 48:20.

rights 48:6.
riot 13:9,
  32:19, 32:22,
  33:9, 34:10,
  36:16, 36:21,
  36:22, 37:14,
  40:10, 41:22,
  42:16, 52:11,
  52:19.
rioter 46:5.
rioters 45:9.
rioting 38:4.
rise 54:4,
  57:1.
rising 47:19,
  47:23,
  47:24.
risk 47:17.
role 43:11,
  45:7.
Rollins 2:7,
  2:8, 3:12,
  6:15, 16:4,
  39:14,
  40:8.
Ronald 2:5,
  3:4, 3:18,
  54:8, 57:5.
Room 56:11.
RPR 2:41,
  62:9.
ruined 49:16.
run 29:5,
  29:12.
running 28:1,
  50:25.
runs 30:17.
.
.
< S >.
S. 1:29, 1:30,
  2:15, 5:12,
  6:8, 19:2,
  37:22, 38:4,
  40:11, 42:15,
  51:22, 52:15,
  53:7, 56:13,
  56:19, 56:24,
  58:22, 59:1,
  59:9, 60:1.

sang 47:8.
sat 48:24.
satisfied 4:14,
  4:23.
save 26:20.
saw 45:9,
  45:10,
  52:10.
saying 16:18,
  16:23, 18:1,
  39:24, 41:24,
  41:25,
  43:10.
says 11:8,
  19:15,
  22:15.
scene 39:21.
school 34:5,
  36:7, 50:8.
score 24:10,
  24:13.
scrum 10:7.
seated 5:10,
  6:23, 54:24,
  57:17.
second 32:10.
seconds 22:12,
  38:6.
Section 8:6,
  8:25, 19:23,
  24:17,
  53:19.
sections
  7:23.
seeing 39:16.
seem 13:25,
  22:8.
self-surrender
  39:6,
  60:14.
Senate 5:13,
  6:8.
send 39:11.
sense 41:15.
sent 49:4.
sentenced 32:7,
  51:16, 51:23,
  52:15, 52:24,
  54:14,
  57:8.

sentences
38:14, 44:23,
50:16, 50:18,
51:12, 53:21,
54:3.
Sentencing
1:17.
separate
16:17.
serious
45:21.
seriousness
44:15,
53:23.
serve 34:21,
35:22, 38:20,
54:14,
57:8.
service 38:14,
51:24, 54:16,
56:2, 56:4,
56:5, 57:10,
58:19.
set 4:12,
27:16, 28:7,
44:10.
settle 20:22.
Seventh 2:9.
several 50:4,
50:12,
53:4.
severe 30:8,
45:23,
60:24.
shall 28:2,
54:16, 54:25,
55:16, 55:23,
56:7, 56:14,
56:17, 57:10,
57:18, 58:10,
58:11, 58:21,
59:3, 59:5.
shape 6:24.
share 55:19.
shock 47:22.
shorthand
2:49.
shouldn't
13:12, 14:12,
14:16,

15:1.
shove 6:5,
14:10.
shoved 6:21,
6:25, 7:9,
10:1.
shoving 25:6.
show 46:16,
59:22.
shows 25:6,
52:5.
sic 15:20,
21:15.
sick 41:21,
41:24.
side 20:11,
40:21, 47:13,
47:14.
sides 8:3,
13:4.
sideways
21:24.
significant
19:16.
signs 52:19.
similar 11:11,
44:25, 45:1,
51:16, 52:16,
52:24.
simply 10:9.
sing 46:13,
46:24.
single 8:21,
41:4,
46:10.
sit 43:17.
sites 42:15.
situated
32:17.
situation
21:20,
40:17.
situations
19:18.
six 15:13,
21:23, 26:5,
27:15, 28:3,
29:1, 29:4,
50:22,
51:3.

skill 36:6.
small 16:8.
smarter 7:5.
smell 43:3.
solely 59:13.
somebody 36:25,
46:4.
somehow 39:2.
someone 7:3,
34:14, 43:18,
46:23.
somewhat
30:3.
sophistication
40:2, 40:4.
Sorry 8:16,
11:8, 12:19,
26:1, 29:2,
33:25, 36:2,
36:12.
sort 6:20,
18:5, 31:15,
39:17,
43:10.
sounds 42:11.
Sox 46:21.
speaking
9:23.
special 28:8,
28:9, 29:8,
29:14, 50:21,
50:25, 54:19,
55:16, 57:13,
58:10, 61:21,
62:1.
specialized
36:6.
specific 12:5,
15:12, 18:25,
19:19, 24:21,
35:2.
specifically
10:17, 18:19,
19:9, 30:22,
35:4.
spectrum
16:23.
spell 60:7.
spelled 60:8.
spills 14:23.

splitting
21:23.
sporting 46:13,
46:20.
sports 46:15,
46:20.
stand 13:5,
46:13, 46:16,
46:17,
52:14.
standard
21:1.
standing 30:11,
41:3, 42:23,
46:14.
stands 49:13.
start 56:4.
starting
49:22.
starts 15:16.
state 23:6,
54:2, 55:6,
57:24.
stated 7:15,
30:1, 50:17,
56:1.
statement
15:4.
statements
44:9,
44:20.
States 1:1,
1:5, 1:19,
2:43, 3:3,
17:16, 17:17,
20:6, 37:20,
48:20, 48:21,
55:20, 56:8,
59:7.
statute 11:3,
18:19, 19:5,
50:24, 55:12,
58:6, 61:5.
statutes
27:5.
statutory 7:19,
19:22, 27:10,
27:14, 28:5,
28:6, 28:15,
50:19, 50:22,

60:20.
stenographic
  62:10.
step 26:10.
stipulated
  12:21.
stolen 48:18,
  48:19.
stomped 30:25,
  31:2, 31:3,
  31:5,
  31:10.
stop 40:19,
  46:16, 52:6,
  52:10.
stopped 37:5.
Street 1:42,
  2:9.
strident
  23:3.
striking 6:6,
  6:12.
strong 9:2,
  50:10.
strongly 7:3,
  22:23.
struggle
  38:12.
struggled
  35:14,
  35:15.
struggling
  13:20.
stuff 14:23.
submit 55:8,
  58:2,
  58:14.
substance 55:7,
  55:8, 57:25,
  58:1, 58:14,
  58:15.
substantial
  53:13.
successful
  36:11,
  50:9.
sufficient
  44:12, 53:21,
  53:22.
suggest 10:19,

14:14, 31:9,
  37:17, 37:25,
  49:25.
suggesting
  14:6.
suggestion
  35:19.
suggests
  15:17.
Suite 1:43,
  2:10.
summarize
  50:18.
superfluous
  9:5.
superior
  43:11.
supervised
  27:19, 27:20,
  27:21, 27:23,
  29:7, 29:13,
  52:17, 52:25,
  54:15, 54:17,
  56:3, 57:9,
  57:11,
  58:20.
supervision
  38:18, 50:4,
  50:12, 54:25,
  55:4, 55:9,
  55:14, 55:25,
  56:23, 57:18,
  57:22, 58:3,
  58:8, 58:14,
  59:9.
support
  49:10.
supports
  19:15.
supposed 14:1,
  32:21,
  52:12.
Supreme
  17:17.
Surely 45:20.
surrender
  59:17, 59:19,
  59:25.
system 46:6,
  46:8, 46:9,

47:13, 48:4,
  48:12, 49:10,
  49:11.
.
.
< T >.
T. 1:38, 2:41,
  62:14.
table 51:7.
talked 30:19,
  32:6.
talks 34:1.
tamper 58:16.
taper 39:15.
tax 48:19,
  49:3.
teams 46:21.
tee 22:2.
ten 24:22,
  25:18.
tension
  42:19.
term 27:15,
  27:20, 27:21,
  27:23, 28:2,
  31:3, 50:24,
  54:17, 55:25,
  57:11,
  58:13.
terms 27:25,
  29:5, 29:12,
  38:13, 39:16,
  41:9, 50:25,
  54:13, 54:14,
  57:6, 57:8.
Terrace 10:8,
  16:25, 21:14,
  22:4, 45:9,
  52:8.
test 55:9,
  58:2.
testify
  49:17.
testimony
  17:3.
testing 58:15,
  58:16.
tests 55:10,
  58:3.
themselves 3:6,

47:15.
thereafter
  52:22, 55:10,
  58:3.
thinking
  46:19.
Thompson 3:15,
  5:6.
Though 7:5,
  14:21, 20:25,
  21:13, 24:22,
  52:1, 53:3,
  53:5.
thousands
  37:23,
  49:11.
threat 49:20.
Three 28:2,
  30:7, 38:5.
throughout
  34:5.
tied 17:14.
today 49:19,
  59:13,
  61:14.
together
  41:4.
took 14:24,
  30:2, 50:1.
total 23:20,
  24:1,
  27:16.
totaling 29:6,
  29:12, 54:19,
  57:13.
totality 43:15,
  43:16.
touched 9:25.
trample 42:8.
trampled 40:17,
  40:25, 41:1,
  42:7.
Transcript
  1:17, 2:49,
  20:15,
  62:10.
transcription
  2:50.
transfer 47:6,
  56:23,

59:9.
travel 55:14,
    55:15, 58:7,
    58:8.
treason 49:5.
trespass 7:21,
    8:3, 8:15,
    8:22, 9:3,
    9:11, 9:12,
    10:4, 10:19,
    11:8, 12:2,
    12:8, 12:24,
    13:15, 14:8,
    14:15, 15:8,
    16:9, 16:12,
    16:15, 16:19,
    17:7, 18:4,
    18:11, 19:4,
    20:12,
    20:13.
trespassed
    14:25.
trespassing
    15:2, 16:13,
    16:20,
    18:24.
trial 3:19,
    13:4, 21:2,
    21:21, 23:18,
    25:5.
tried 49:5.
tries 47:15.
troops 49:4.
trouble
    41:17.
true 17:11.
try 31:24,
    39:15, 46:3,
    49:11.
trying 13:9,
    13:13, 13:18,
    14:13, 16:10,
    20:21, 31:8,
    32:11, 32:23,
    34:10, 40:11,
    42:16, 43:4,
    45:10, 46:8,
    47:13, 48:11,
    49:15, 52:6,
    52:9.

turn 8:6, 49:1,
    52:8.
turned 37:18.
Turning 24:8.
twice 32:19.
two 5:18, 7:20,
    12:15, 13:8,
    14:3, 16:16,
    22:12, 29:20,
    31:25, 42:15,
    46:21, 46:22,
    48:13, 51:19,
    55:10,
    58:3.
two-level
    23:13, 23:18,
    23:24.
two-point
    24:16, 24:18,
    25:19.
type 48:17.
tyranny
    47:19.
.
.
< U >.
ultimately
    17:11,
    20:23.
unable 61:8.
underlying
    26:17,
    30:7.
understand 7:4,
    7:5, 9:15,
    34:17, 37:4,
    42:21,
    43:2.
understanding
    59:18.
understands
    35:5, 38:9.
Understood
    23:1.
unequivocally
    21:9.
unfortunate
    22:22.
unintelligent
    40:9.

unique 17:23,
    20:16.
United 1:1,
    1:5, 1:19,
    2:43, 3:3,
    17:17, 20:6,
    37:20, 48:20,
    48:21, 55:20,
    56:8, 59:7.
unlawful 55:7,
    58:1.
unlawfully
    14:15, 55:6,
    57:25.
unless 7:6.
unlikely 25:15,
    25:16.
unpaid 30:17.
unparalleled
    47:7.
unprecedented
    10:19, 10:25,
    25:2, 25:13,
    25:15.
until 43:16,
    55:25, 56:15,
    58:13,
    59:3.
unwarranted
    44:24,
    51:15.
unwise 20:17.
upend 49:11.
uphold 6:12.
upward 19:18.
uses 15:16.
using 12:6,
    20:15.
.
.
< V >.
v. 19:2, 20:6,
    51:22, 52:15,
    52:23.
variances
    23:20, 24:1,
    26:22.
variety 27:2.
various
    32:18.

vary 17:9,
    26:17.
vehicle
    49:24.
Venn 18:5.
verdict
    20:24.
versus 3:3,
    12:25, 14:4,
    15:11,
    15:13.
victim 18:25,
    19:14, 19:20,
    56:9,
    58:23.
victims 45:2.
video 13:10,
    22:12, 38:6,
    40:16.
videos 40:15.
view 16:19,
    21:7, 25:7,
    39:18, 39:19,
    39:23,
    46:3.
viewpoints
    47:11.
violated
    30:21.
violating
    34:10,
    42:24.
violation 3:21,
    3:23, 3:24,
    4:1, 27:7,
    27:9, 27:12,
    27:14, 32:25,
    33:1,
    60:22.
violence 19:24,
    25:1, 25:8.
violent 24:24,
    45:20.
violently
    25:10.
visit 39:9.
voice 48:5,
    48:6.
voluntary
    59:17, 59:19,

59:24.
vs 1:8.
.
.
< W >.
W. 1:42.
waives 54:23.
walked 36:17.
walking 41:3,
    41:4.
wall 13:10,
    34:7,
    36:24.
wanted 22:2,
    30:1, 31:24,
    36:11,
    36:12.
war 48:13,
    48:14.
warning
    20:19.
warranted
    19:19.
wars 48:13.
Washington
    1:10, 1:32,
    2:11, 2:46,
    48:7, 48:23,
    49:1, 49:4,
    56:11.
watching
    46:15.
wave 20:5,
    32:10,
    45:19.
ways 25:14,
    48:6.
weapons 55:24,
    58:12.
weekends
    35:23.
Welcome 3:10.
West 45:8,
    52:7.
Whatever 13:3,
    13:24, 43:3,
    46:16, 47:2,
    59:24.
whatsoever
    17:5,

20:15.
Whereas 11:3.
whether 6:21,
    16:1, 21:7,
    22:5, 24:25,
    34:18, 59:14,
    59:15,
    59:16.
whims 60:1.
whiskey 48:15,
    48:16, 48:19,
    49:3, 49:7.
whole 53:16.
willfully
    47:16.
WILSON 2:15,
    61:17,
    61:21.
win 46:23.
windows
    40:23.
Wing 5:13,
    6:9.
withdrawing
    31:23.
Within 8:5,
    8:9, 13:24,
    55:9, 56:13,
    58:2, 59:2,
    61:6.
without 8:2,
    13:18, 16:9,
    16:12, 16:15,
    30:2, 34:25,
    51:10, 55:22,
    61:9.
woke 39:23.
won 47:14.
words 18:1,
    48:10.
work 9:16,
    35:23.
worked 48:12.
worker 34:4.
working
    11:21.
works 36:4,
    36:5,
    59:19.
world 16:19.

worry 38:16.
worth 21:11.
worthy 34:19.
.
.
< Y >.
year 27:10,
    27:20,
    27:22.
years 27:25,
    28:3, 33:25,
    43:21, 47:5,
    50:11, 50:24,
    53:10.
young 34:3,
    34:5.
yourself
    48:10.
.
.
< Z >.
zero 15:13,
    24:13, 24:15,
    26:4, 27:18,
    51:3.
Zone 15:21,
    51:6.